[Civ. No. 5535. Second Appellate District, Division Two.—October 20, 1927.]

NANA K. INMAN, Respondent, v. JOHN L. SCHECHER, Appellant.

R. C. W. Friday for Appellant.

Harry L. Person and George D. Rodgers for Respondent.

COLLIER, J., *pro tem.*—On December 15, 1922, respondent in writing demised to appellant two parcels of land situate in the city of Los Angeles, described therein as follows:

"Parcel 1. The west 147 feet of Lot 'A,' and the west 147 feet of the north 10 feet of Lot 'B,' of the Davis & Figueroa Street tract, in the county of Los Angeles, state of California, as per map recorded in book 5, page 102 of maps, in the office of the county recorder of said county;

"*Excepting therefrom* an easement for street purposes over the west 20 feet condemned for the widening of Figueroa Street by final decree of condemnation had in Case No. 75183, Superior Court of Los Angeles county, a certified copy thereof being recorded in book 5533, page 179 of Deeds, *also the north 20 feet of the east 127 feet of Lot 'A,' as per case pending in the Superior Court in and for the county of Los Angeles to condemn the same for street purposes, being case No. B–92381.*

"Parcel 2. The north 5 feet of the west 147 feet of Lot 'C,' and the south 40 feet of the west 147 feet of Lot 'B,' both in the Davis & Figueroa Street tract, in the county of Los Angeles, state of California, as per map recorded in book 5, page 102 of maps, in the office of the county recorder of said county;

"Excepting therefrom an easement for street purposes over the west 20 feet thereof condemned for the widening of Figueroa street by final decree of condemnation had in case No. 75183, Superior Court of Los Angeles county, a certified copy thereof being recorded in book 5533, page 179 of deeds." (Italics ours.)

Attention is called to that portion of the paragraph in the description of parcel 1 commencing in italics, and particularly the italicized portion, commencing "also the north 20 feet," etc. This was the strip taken for the widening of Florence Avenue, for which an assessment was levied and which is mentioned and discussed hereafter.

The tenancy commenced December 15, 1922.

Said lease contained several further provisions which are material here, and for ready reference we will designate them as clauses 1, 2, 3, 4, and 5, respectively, and they are as follows:

Clause 1. "The lessee further agrees to pay all assessments of every kind and nature that may be levied against said property for improvements of any kind and all taxes levied during the entire term of this lease, including the last half of taxes for 1922–1923."

Clause 2. "The lessee further agrees to commence the construction of a class-A fireproof building within thirty (30) days from the date of the execution of this lease, and all buildings erected upon said property during the term hereof shall be and remain thereon and become a part of the realty, and be and belong to the lessors at the expiration of this lease."

Clause 3. "It is further agreed that in the event any portion of the property hereby leased is condemned for street or other purposes, that the money received therefrom shall be immediately paid over to the lesssee."

Clause 4. "In the event of the failure of the lessee to pay the rent herein specified at the times and in the amounts herein provided, the lessors may enter and retake possession of said premises, and if default shall be made after thirty (30) days in the payment of the same, this lease may be determined at the option of the lessors."

Clause 5. "*It is admitted* that M. M. Inman, husband of Nana K. Inman, has no interest in said property, and is signing this lease as the husband of said Nana K. Inman, lessor." (Italics ours.)

By clause 2 appellant covenanted to construct on said premises a class A fireproof building within thirty days. This was never done, and in spite of his covenant appellant subleased a portion of said premises to the Shell Oil Company of California, who conducted a filling station thereon up to the commencement of this action. Respondent "protested" to appellant because of his failure to build said class A building, and his leasing to the Shell Oil Company.

In December, 1925, respondent served on appellant a notice declaring a forfeiture of said lease on account of said default.

On August 17, 1925, an assessment was levied on said premises by the city of Los Angeles for the opening and widening of Florence Avenue. This assessment amounted to $1,823.87, and became due August 1, 1925, and if not then paid became a lien on said premises and rendered the same subject to sale.

Appellant was notified of said assessment before it became delinquent, but failed to pay the same, and respondent paid it on October 3, 1925. Appellant has never reimbursed respondent therefor.

In December, 1925, respondent served a demand upon appellant to pay him, respondent, the amount of said assessment or deliver possession of the premises to respondent.

Respondent accepted rent from appellant from the commencement of the term, December 15, 1922, until September 15, 1925, but respondent has refused to accept any rent from appellant since that date, although appellant duly tendered same to him.

The case was tried before the court with a jury and judgment was rendered in favor of the plaintiff upon the first two counts.

■ Appellant in his answer claims such premises to be the community property of M. M. and Nana K. Inman, but is foreclosed from that contention by clause 5 of the lease to which he subscribed; hence, that controversy ends there.

■ For the same reason appellant's contention that the notice of forfeiture is insufficient because it was not signed by M. M. Inman is not tenable. By clause 5 it was "admitted" by both respondent and appellant that M. M. Inman had no interest in said property, and that he signed the lease merely as husband of Nana K. Inman; and our attention has not been called to any evidence to the contrary. In any event, there is abundant evidence in the record to show that the property was the separate property of Nana K. Inman.

As an alleged defense made to all of respondent's claims, and by way of "counterclaim and set-off," appellant sets forth the following:

"That, within two years last past, aforesaid plaintiff Nana K. Inman, and said Nana K. Inman jointly with her aforesaid husband, M. M. Inman, for a valuable consideration, jointly and severally became indebted to this defend-

ant, John L. Schecher, for and on account of detriment suffered by said John L. Schecher, and moneys paid by said John L. Schecher, at the special instance and request of said M. M. Inman and Nana K. Inman, husband and wife aforesaid, to and for the use and benefit of said M. M. Inman and Nana K. Inman, in the full sum of four thousand three hundred eighty-four and 60/100 dollars ($4,384.60), and which sum the said M. M. Inman and said Nana K. Inman jointly and severally promised and agreed to pay this defendant John L. Schecher;

"That demand has been made by this defendant for the payment to him of the last-named aforesaid sum, in and by virtue of further agreement in said exhibit 'A' further set out, to wit, in words and figures set out as follows:

" 'It is further agreed that in event any portion of the property hereby leased is condemned for street or other purposes, that the money received therefrom shall be immediately paid over to the lessee.' "

Appellant's motion for nonsuit was properly denied as respondent had introduced substantial evidence in her behalf on all points raised by said motion. (*Estate of Caspar*, 172 Cal. 147 [155 Pac. 631].)

The demurrer of appellant to plaintiff's complaint was properly overruled.

We come now to the question of waiver, if any, presented by respondent's acceptance of rent from the inception of the lease to September 15, 1925—a period of two years and nine months. Such acceptance would only affect a violation of clause 2, as that was the only breach complained of up to that time.

We are of the opinion that such acceptance was a waiver of that breach. Respondent claims to have "protested" against said breach, but nevertheless continued to receive the rent. In other words, as was said in *Miller* v. *Reidy*, 85 Cal. App. 757 [260 Pac. 358]: "This was a clear attempt to eat the cake and still keep it. His actions belie his words. Waiver is a question of intention (citing cases). For the lessors month after month to accept rent specified in the lease, and at the same time declare that there was a forfeiture, results in an irreconcilable inconsistency." Therefore, in that particular the verdict of the jury and the judgment thereon are not supported, and are erroneous.

This is immaterial, as we think the verdict on respondent's first cause of action must nevertheless be affirmed.

■ The failure of appellant to pay the assessment for widening and improving Florence Avenue was a special and independent breach of another and independent covenant of the lease. Since that breach respondent has steadily refused to accept any rent, and hence in that regard there has been no waiver. No other waiver is either alleged or proven. Section 1161 of the Code of Civil Procedure provides for a forfeiture of a lease under such circumstances, and notices in proper form were served thereunder.

We will now take up appellant's second defense. Appellant's contention is based upon said clause 3: "It is further agreed that in event any portion of the property hereby leased is condemned for street or other purposes, that the money received therefrom shall be immediately paid over to the lessee." From the evidence it appears that one Frase was the owner of the property in question next preceding Mrs. Inman. In said Florence Avenue condemnation case Frase was awarded a judgment against the city of Los Angeles for $7,980, which was subsequently assigned to respondent herein.

In the proceedings that followed an assessment was levied against the leased premises in the sum of $1,823.87. Under the lease the assessment should have been paid by appellant. It was not so paid, because delinquent, and respondent paid the same by offsetting it against said judgment, and received the net balance of the award from the city of Los Angeles. This amounted to $4,384.60. Appellant claims that in effect he has paid said assessment in that by clause 3 he was entitled to the proceeds of such judgment, from which the assessment was paid; that respondent having collected the same and paid therefrom said assessment, said payment should be treated as having been made by appellant and the said net balance belonged to appellant. The net balance of $4,384.60 is the basis of appellant's second defense by way of counterclaim or set-off.

■ There are four answers to appellant's contention. (1) None of the property leased to appellant has been condemned. The parcel condemned and which was the basis of the award was by the very terms of the lease excepted

from the premises demised to appellant. This seems too plain for any argument.

(2) Appellant's alleged demand arises out of the failure of respondent to turn over to appellant the proceeds of said judgment. Even assuming appellant was entitled thereto under the clause 3 (which we deny), clause 3 is entirely independent of the covenant to pay rent or to pay taxes or assessments; hence no breach by respondent of clause 3 would be a defense to an unlawful detainer suit for a violation of the covenant to pay taxes and assessments. (*Arnold* v. *Krigbaum,* 169 Cal. 143 [Ann. Cas. 1916D, 370, 146 Pac. 423].) (3) The defense urged by appellant is not one of the class of equitable defenses which may be interposed in an unlawful detainer case, it being for money only, for which a suit at law will lie. (4) A set-off or counterclaim is not permissible in an action for unlawful detainer. (*Arnold* v. *Krigbaum, supra; Schubert* v. *Lowe,* 193 Cal. 291 [223 Pac. 550].)

The judgment of the trial court is affirmed.

Craig, Acting P. J., and Thompson, J., concurred.