[L. A. No. 11323. In Bank.—December 21, 1931.]

KERN SUNSET OIL COMPANY (a Corporation), Appellant, v. GOOD ROADS OIL COMPANY (a Corporation) et al., Respondents.

Everts, Ewing, Wild & Everts, Dan F. Conway, L. N. Barber, Morris, Jaffa & Thompson and C. M. Ozias for Appellant.

Borton & Petrini and C. V. Anderson for Respondents.

CURTIS, J.—In this action the plaintiff sought to declare the forfeiture of a certain lease of oil lands, executed by it in favor of the defendants, Barlow and Hill, and by them assigned to the defendant, Good Roads Oil Company, upon the ground and for the reason that the lessees and their assign had broken the terms of said lease in that, while the lease provided for the drilling and placing upon production of two wells each year until sixteen wells had been drilled and brought into production, said lessees and their assign had only completed thirteen wells during a period of over thirteen years from the date of said lease until notice of forfeiture thereof was served upon them by the plaintiff. The lease provided that the lessor, the plaintiff herein, reserved to itself the one-seventh part of all oil or other minerals produced on said premises during the term of said lease. It was further agreed that on or before the fifteenth day of each and every month the lessees should deliver into tanks and reservoirs to be provided by plaintiff one-seventh part as royalty of any and all minerals and water produced pursuant to this lease during the preceding month. It further appears that by an arrangement made between the parties hereto and the Standard Oil Company, the oil produced under said lease was delivered and sold to the last-named company at a stated price and that the Standard Oil Company paid in money each month to the parties to said lease the amount to which each was entitled under the terms of said lease,—that is, one-seventh thereof to the plaintiff as royalty or rent, and six-sevenths thereof to the lessees.

The lease was dated May 1, 1911, and was to continue to May 1, 1928, a term of seventeen years. The court found that at the date of the lease there were two producing wells upon the property and three wells were then partially drilled which were thereafter completed by the lessees. It also found that in addition to these five wells, the lessees commenced and completed on said property eleven wells after the execution of said lease as follows: Three wells in the year 1914, two wells in each of the years, 1916, 1917 and 1918, and one well in each of the years, 1920 and 1924. It further found that all of these eleven wells last mentioned were completed, but did not find the date of completion of all of them. This is a matter of no importance

as no claim is made that the wells commenced by the lessees were not completed within a reasonable time after their commencement. The plaintiff bases its right to a forfeiture of said lease upon the failure of the lessees and their assign (whom we will hereafter refer to as the lessees) to drill and place upon production within the time specified in the lease the number of wells required by the terms of said lease, which would be two wells each year until sixteen wells had been completed and placed upon production. The court further found that the plaintiff had received and accepted from the date of said lease up to the date the notice of forfeiture was served by the plaintiff upon the lessees, the one-seventh royalty provided for by said lease, and that after service of said notice of forfeiture, and up to the commencement of this action, and for at least three months thereafter, said royalty was regularly paid to and received and accepted by the plaintiff. The findings show that the first notice given by the plaintiff to the lessees in which any claim was made that the lessees had not complied with the terms of the lease was dated and served on or about March 11, 1924. This was followed by a notice, dated May 26, 1924, demanding possession of the leased premises, and by a second notice dated July 11, 1924, making a similar demand. This action was commenced on July 25, 1924. Regarding the payments of royalty after March 11, 1924, the date of the first notice given by the plaintiff, and the amounts of said payments, the court found said payments were made as follows:

For the month of March—$656.07 paid April, 1924.
For the month of April—$546.63 paid May, 1924.
For the month of May—$723.12 paid June, 1924.
For the month of June—$548.03 paid July, 1924.
For the month of July—$556.64 paid August, 1924.
For the month of August—$670.84 paid September, 1924.
For the month of September—$799.00 paid October, 1924.

It also appears that after the institution of this action the plaintiff served upon the Standard Oil Company notice of its claim that said lease was canceled, and the Standard Oil Company after receiving said notice refused to make any further payments for oil so delivered to it. Whereupon and on January 30, 1925, the parties hereto entered into a stipulation whereby the Standard Oil Company paid to the plain-

tiff not only the royalty for the previous months but thereafter on each and every month the regular royalty called for by the terms of this lease, and it also paid to the lessees the sum of $2,000 per month, which amount it seems was the approximate cost per month of producing the oil on said leased premises. It was agreed in said stipulation that the acceptance by said lessor of the royalty subsequent to the date of said stipulation should not be deemed a waiver on the lessor's part of any claim to have said lease canceled. The remainder of the proceeds received for the oil produced on said leased premises was deposited and impounded with a bank of Bakersfield to await the result of this action. As the lease by its terms expired on May 1, 1928, the right to the possession of said real property is no longer involved, and the sole controversy relates to said impounded money, and to the rights of the parties in this action to said money. In addition to the foregoing facts, the court also found that the president of the plaintiff company from 1911 to some time in 1922 lived on lands adjoining the leased premises, that he was on said premises two or three times a month during said period of time, and that from 1911 to 1914 he talked with those in charge of said property, and could readily perceive the activities being carried on under said lease. From these facts, the court made its conclusions of law and found that there had never been a breach of any of the terms of said lease; that if any breach of the terms of said lease had occurred the plaintiff had waived the right to claim or assert the same; that plaintiff was estopped from asserting any breach of the terms of said lease; and that plaintiff's complaint be denied; that the impounded moneys be paid over to the defendants; and that they recover their costs. The judgment decreed that plaintiff take nothing by its said action, and that defendants recover their costs. From this judgment the plaintiff has appealed upon the judgment-roll.

It is strenuously insisted on this appeal by the plaintiff and appellant that the court's conclusion of law that the lessees had never breached said lease is unsupported by the findings. On the other hand, the lessees and respondents contend with equal force that said conclusion finds ample support in the findings. It may be seriously questioned whether the conclusions of the court respecting the breach

of the terms of the lease, the waiver thereof by the plaintiff and the estoppel of plaintiff, are in fact conclusions of law or whether they are not in their legal aspects findings of fact. But as the trial court found fully the probative facts upon which they are predicated, and, as neither party has raised this point, we will treat them as conclusions of law. In view of the conclusion we have reached regarding the question of waiver it will not be necessary for us to decide whether or not the lessees were guilty of any breach of the terms of the lease.

By the terms of the lease the lessees were to drill and complete and put upon production two wells in each year until sixteen wells had been finished and brought into actual production. The lease was executed on May 1, 1911. Therefore, by the 1st of May, 1919, the full number of wells, sixteen in all, should have been completed and brought into production by the lessees. At that time, according to the contention of the plaintiff the lessees had commenced only thirteen wells. Yet after this date and for almost five years thereafter the plaintiff with full knowledge of all the facts, accepted the regular monthly payments of royalty from the wells upon the leased premises without making any complaint whatever regarding the lessees' failure to complete the remaining wells. It then served its first notice claiming a breach of the terms of the lease. During this time the lessees had commenced and completed another well. After the service of this notice the plaintiff continued to receive and accept the monthly payments of royalty called for by the lease not only up to the time of the commencement of the action but for a period of at least three months thereafter.

The acceptance of rent by the landlord from the tenant, after the breach of a condition of the lease, with full knowledge of all the facts, is a waiver of the breach and precludes the landlord from declaring a forfeiture of the lease by reason of said breach. This is the general rule and is supported by ample authority. (15 Cal. Jur., p. 787; *Miller* v. *Reidy,* 85 Cal. App. 757 [260 Pac. 358]; *Inman* v. *Schecher,* 86 Cal. App. 193, 198 [260 Pac. 605]; *Richards* v. *Silveria,* 97 Cal. App. 166, 170 [275 Pac. 478].) The rule is also stated in Ruling Case Law as follows: "The most familiar instance of the waiver of the forfeiture of a lease

arises from the acceptance of rent by the landlord after condition broken, and it is a universal rule that if the landlord accepts rent from his tenant after full notice or knowledge of a breach of a covenant or condition in his lease for which a forfeiture might have been demanded, this constitutes a waiver of forfeiture which cannot afterward be asserted for that particular breach or any other breach which occurred prior to the acceptance of the rent. In other words, the acceptance by a landlord of the rents, with full knowledge of a breach in the conditions of the lease, and of all of the circumstances, is an affirmation by him that the contract of lease is still in force, and he is thereby estopped from setting up a breach in any of the conditions of the lease, and demanding a forfeiture thereof.'' (16 R. C. L., p. 1132.) If we understand the plaintiff's position, it concedes the rule to be as stated above. ■ It contends, however, that the covenant in the lease involved herein to drill two wells each year for a period of eight years and until sixteen wells were drilled and placed upon production is a continuing covenant and that a waiver of a former breach does not preclude the lessor from thereafter claiming a forfeiture of the lease for a subsequent breach of this continuing covenant. In other words, appellant contends that the covenant to drill the sixteen wells is a continuing covenant, and that there was a separate and distinct breach thereof each day during the time the lessees failed to comply with said covenant, and that the acceptance of rent after one of said breaches and the waiver thereby of such breach is not a waiver of any subsequent breach of said covenant.

Whether the covenant to drill a stated number of wells upon the leased premises within a given time is a continuing covenant, or a noncontinuing covenant, is a question not entirely free from difficulty. The cases of *McGlynn* v. *Moore,* 25 Cal. 384, and *Inman* v. *Schecher,* 86 Cal. App. 193, 198 [260 Pac. 605], each involved a lease wherein the lessees agreed to build a warehouse upon the leased property. In each of these cases the lessee failed to erect the building within the time fixed by the lease. Notwithstanding this breach of the contract, the lessor, or landlord, continued for a time to accept rent for the premises with full knowledge that the tenant had failed to comply with the terms of the lease requiring him to erect a warehouse. Thereafter the landlord claimed a forfeiture

of the lease and possession of the premises by reason of the failure of the tenant to erect said warehouse. It was held in each case that by acceptance of the rent the landlord had waived his right to claim a forfeiture by the tenant's failure to erect the warehouse. In the case of *McGlynn* v. *Moore, supra,* the court said, ''The appellants, to avoid the consequences of the receipt of the rent, and to show that it did not amount to a waiver of the forfeiture, say that the covenant to build is a continuing covenant; that the failure of the lessees after the 14th of July, 1861, to build was a continuing breach of their covenant, and that if the receipt of rent accruing after that time was a waiver of the forfeiture, the neglect of the lessees to build after such receipt of rent was a continuing cause of forfeiture. There can be no doubt that the receipt of rent accruing subsequent to the act which works the forfeiture waives the forfeiture. (Citing cases.) . . . No case is cited by the appellants that asserts the doctrine that the covenant to build within a given period, is a continuing covenant, and we have been unable to find such a case.'' The court then goes on to show the difference between these two classes of covenants, and concludes that a covenant to erect a building which involves the doing of a single act is not a continuing contract, and that the failure to perform such a covenant is a ''breach once for all'', and that when once waived is waived for all time. In *Inman* v. *Schecher, supra,* the court simply held that the acceptance of rent from the inception of the lease to September 15, 1925, a period of two years and nine months, was a waiver of a covenant in the lease, ''to commence the construction of a class A building within thirty (30) days from the date of the execution of the lease'', thereby in legal effect holding that the covenant to build was not a continuing covenant. We are cited to no authorities which conflict with these two cases. We confess our inability to draw any distinction in principle between an agreement to construct a building upon leased premises and an agreement to drill a well thereon. Each is a covenant to perform a single act, which act when completed results in the performance of the covenant. On the other hand, the failure to perform said act is a breach of the covenant requiring its performance, and once this breach is waived, the subsequent failure of the tenant to comply with said covenant affords the landlord no right to a for-

feiture of the lease. It would be otherwise with a continuing covenant like that involved in the case of *Myers* v. *Herskowitz*, 33 Cal. App. 581 [165 Pac. 1031], relied upon by the plaintiff. The covenant in the lease considered in the opinion in that case provided that a certain passageway "shall at all times be kept free and clear" for the "common purpose of ingress and egress of any and all persons doing business in said room and their patrons". It will readily be seen that this covenant was not to perform a single act, such as constructing a building or drilling a well, but was to preserve a condition in the leased premises which should continue during the entire life of the lease. On each occasion the tenant failed to maintain said condition, he breached the covenant of the lease. Each breach was separate and distinct from the other, and the waiver of one particular breach would not be a waiver of any breach subsequently occurring.

The fact that the lease executed by the plaintiff in this case contained a covenant to drill more than one well would not make the covenant a continuing covenant. The covenant to drill each well, or to be more exact, the covenant to drill two wells during any one year, might be entirely distinct and separate from the covenant to drill two wells during any of the other years covered by the contract, and the waiver of the breach of any one of said covenants would not be a waiver of the breach of any covenant thereafter occurring, but after the expiration of the time within which all of the wells were to be drilled and the full number had not been drilled, the covenant as a whole was then breached, and a waiver of this breach would foreclose all rights of the plaintiff thereafter to a forfeiture of the lease by reason of said breach.

That plaintiff waived this covenant in the lease we think there can be no question. The time in which the lessees agreed to drill and place upon production sixteen wells upon said leased premises expired on May 1, 1919, at which time according to the contention of the plaintiff the lessees had completed only thirteen wells. The lessees, therefore, at this date may have committed a clear breach of the terms of the lease. Yet after this date, and for almost five years following the plaintiff accepted and received the regular monthly payments of royalty from the leased premises with-

out making any complaint or objection to the default on the lessees' part. By the receipt of these payments, the plaintiff clearly and definitely recognized the existence of the lease. "A landlord who thus recognizes a lease as a subsisting, operative contract should not be permitted to insist upon a past forfeiture, nor be permitted to assert that the contract is no longer a subsisting lease affording to the tenant all his contractual rights thereunder. (Citing authorities.)" (*Jones* v. *Maria*, 48 Cal. App. 171 [191 Pac. 943].)

But even if the covenant to drill the sixteen wells is a continuing covenant it cannot avail the plaintiff in this action, as the findings show that even after the service of the notice of forfeiture and for three months after the commencement of this action, the plaintiff continued to receive and accept the regular monthly payments of royalty under the lease. "Where, however, a landlord, having sued to enforce the forfeiture, thereafter accepts rent subsequently falling due, thus waiving the breach antedating the action, the fact that the covenant broken is a continuing one does not operate to preserve the breach as a foundation for the litigation. His right of action, so far as that particular suit is concerned, is gone. If he would enforce a forfeiture for the breach continuing after the suit, he must serve a new notice to quit and bring a new suit." (15 Cal. Jur., p. 789.)

The plaintiff while admitting that the rules above enunciated might apply to all ordinary leases, contends that they should not govern in the case of a lease like that involved in this action, where the leased premises consist of oil-bearing lands which are let for the purpose of developing the oil and other minerals therein, and in which the lessor reserves a percentage of the oil produced as a royalty. Plaintiff relies in support of the contention upon the case of *W. T. Waggoner Estate* v. *Wichita County*, 3 Fed. (2d) 962. That case involved the right of the authorities of Wichita County to collect a tax levied "on so-called royalties under oil and gas leases". The leased premises were situated in the county of Wichita. The contention of the owner of said premises was that the property interest which was subject to the tax in question was personal property, and was not taxable in the county other

than the owner's residence. The court held that under the statutes of that state (Texas) the property was taxable in the county 'in which the leased premises were located. In the course of its opinion the court said, ''From the facts that, prior to the making of the leases now in question, the lessor was the owner of the oil in or under the land described, and that nothing contained in those instruments evidences the lessor's consent that the lessee have or retain as owner the part of the oil produced which the lessee was required to deliver to the lessor, it follows that the lessor was the owner of that part of the oil both before and after it was brought to the surface. His property right to mineral oil in or under land owned by him was taxable as real property.'' From this language the plaintiff argues, ''that this one-seventh *royalty* which the plaintiff herein received at all times subsequent to the date of the lease was something essentially different from the payment by a lessee of money in the way of rent under an ordinary building lease. The one-seventh royalty was *property* the title to which at all times vested in .the plaintiff.'' We fail to see how this difference in the ownership of the property can make any material difference in the relations of the parties when we are considering the effect of the conduct of the lessor upon the question of waiver. ██ The theory upon which the courts hold that acceptance of rent, after breach of the covenants of the lease with knowledge of all the facts surrounding said breach, constitutes a waiver of such breach is that by accepting the rent under these circumstances the lessor recognizes the existence of the lease, and that it is inconsistent and not permissible for a party to recognize the existence of a lease and accept benefits under it, and at the same time claim that it is forfeited and seek to recover the fruits of a forfeiture. The plaintiff in accepting the monthly payments of royalty, accepted the same under the terms of the lease. Had there been no lease there would have been no royalty. The royalty was a creation of the lease, and by accepting it the plaintiff plainly recognized the existence of the lease. We see no valid reason for making any distinction in respect to the question of waiver by acceptance of rent or royalty between a lease of oil lands and a lease of any other kind of property.

Plaintiff in endeavoring to justify the acceptance and receipt of the royalty asks what it could have done under the circumstances, and intimates that its only other course would have been to let its proportion of the oil run to waste down the canyon. But the findings show that no oil was delivered directly to plaintiff. On the other hand, by the agreement of the parties all of it was sold and delivered to the Standard Oil Company, and this company paid each month one-seventh of the proceeds of all oil delivered during the previous month to the plaintiff. There was nothing to have prevented plaintiff from refusing these monthly payments from the Standard Oil Company. The logical thing for the plaintiff to have done if it claimed a forfeiture of the lease would have been to notify the Standard Oil Company that the lease was forfeited, and to have demanded of that company the entire proceeds from the sale of oil from the leased premises. It is true that it gave such a notice to the Standard Oil Company but not until three months after the commencement of this action, up to which time it regularly accepted these monthly payments of royalty. It was then too late, for by its previous conduct it had waived any breach of the lease.

Plaintiff also cites the case of *Linnard* v. *Sonnenschein*, 94 Cal. App. 729 [272 Pac. 315], as supporting some phase of its argument that no waiver on its part was proven or found by the court, and quotes from it as follows: "Waiver cannot be predicated upon the fact of acceptance of rent alone. The party relying on waiver must plead and prove facts from which an actual intention to relinquish the right may be derived. This intention may be manifested by express agreement or by conduct. If conduct is relied upon, *bona fide* reliance upon such conduct must also appear." In that case, however, the evidence was that on receipt of a check by the landlord in payment of the rent after breach of the lease he notified the tenant that, "If you are not contented that I shall accept the sum evidenced by this check without prejudice to the position previously taken by me in respect to your tenancy and the amount due thereunder, kindly advise me." A week passed without the landlord hearing from the tenant, whereupon he cashed the check. The following month the tenant sent a check for the month's rent, with a statement that, "We will con-

tinue to remit the rents as we have in the past in accordance with the terms of our lease.'' This check was promptly returned by the landlord. Under this state of facts the court held that no waiver was intended by the landlord. It is quite evident that had the landlord accepted the rent unconditionally, as did the plaintiff in this case, the decision of the court would have been entirely different. It is true that acceptance of rent alone will not always result in a waiver, but proof of acceptance of rent after condition broken with full knowledge of all the circumstances of said breach has invariably been held sufficient to constitute a waiver of the breach. As stated in the authorities quoted above, this is ''the universal rule''. Applying this rule to the facts in the present case, we are compelled to hold that the plaintiff has waived any breach of the lease which the lessees may have committed. Plaintiff under these facts is not entitled to recover in this action. This conclusion renders it unnecessary to pass upon the question of estoppel.

The judgment is affirmed.

Landgon, J., Preston, J., Shenk, J., Richards, J., Seawell, J., and Waste, C. J., concurred.