[Civ. No. 6403. Third Appellate District.—December 27, 1940.]

HELEN R. KEATING, Appellant, v. DEBORAH PRES-TON, Respondent.

[Civ. No. 6404. Third Appellate District.—December 27, 1940.]

DEBORAH PRESTON, Respondent, v. HELEN R. KEAT-ING, Appellant.

Chapman & Chapman, Clyde F. Murphy and John S. Frazer for Appellant.

Arnold Praeger for Respondent.

THOMPSON, Acting P. J.—The above-entitled suits were consolidated for trial. Both actions involve the validity and construction of a lease of a portion of hotel property in Sierra Madre for the purpose of conducting a restaurant business. The first case is a suit to terminate the lease for alleged breach of an implied covenant not to violate section 337a of the Penal Code by accepting wagers from restaurant customers on horse races. The second suit sought to enjoin the lessor from demising or using space in the hotel for a competing restaurant business, and from closing the doorway communicating between the lessee's restaurant and the hotel lobby. The court adopted findings in both cases adverse to the lessor. From the judgments which were accordingly rendered separate notices of appeal were given.

May 1, 1935, the Farmers & Merchants National Bank of Los Angeles executed its written lease to Deborah Preston of "All the space . . . necessary to do the restaurant busi-

ness", together with the right to "serve . . . liquors not only on the leased premises but also *in any part of the hotel*" for the term of three years, in consideration of monthly rental "to be paid on the 5th of the month for the previous calendar month". The lease provides for the right of the lessor to re-enter the premises for failure to pay any installment of rent when due or "if default shall be made in any of the covenants *herein contained*". The restaurant occupied a portion of the ground floor of the Hotel Sierra Madre which was conducted by the appellant in the remaining portion of the two-story hotel building fronting on West Central Avenue in that city. At all the times involved in this litigation the appellant, Helen R. Keating, managed and operated the hotel business in that building. There was a doorway connecting the restaurant with the lobby of the hotel, which was commonly used by the lessee in providing the guests of the hotel with both food and liquor. The restaurant contained no adequate wash-room or toilet. By common consent, the hotel wash-room and toilet were frequently used by customers of the restaurant. The hotel property and lease of the restaurant were conveyed to the appellant, Helen R. Keating, January 29, 1937. Both the hotel and the restaurant were patronized by many persons who were interested directly and indirectly in horse racing. During much of the time involved in this litigation the appellant employed in her hotel a clerk by the name of Frank Fishback, who accepted money from both the appellant and from many of her hotel guests, to be delivered to the proper parties at the race track as wagers on horse races. It appears that Deborah Preston, the lessee of the restaurant property, also occasionally accepted money from her restaurant customers to be placed on horse races. The appellant first heard that the lessee accepted money for that purpose, as an accommodation to her customers, in November and December, 1936. The appellant had positive knowledge on February 19, 1937, that the lessee accepted money for that purpose. On March 4th, the appellant demanded and on the following day accepted rent for the restaurant for the month of February, which accrued on March 5, 1937. After the execution of the lease the appellant closed and barred the door intervening between the restaurant and her hotel, and threatened to lease to other individuals another portion of her hotel to be operated as a restaurant or cocktail room in competition with the respondent's restaurant. Mrs.

Keating then brought suit to rescind the lease of the restaurant property on the ground of breach of covenant not to use the property for a purpose other than that of maintaining a restaurant, and that the violation of section 337a of the Penal Code, in accepting money to be wagered on horse races, constituted a forfeiture of the lease.

About the same time Deborah Preston commenced another suit against Mrs. Keating, seeking to enjoin her from leasing any other portion of her hotel property to other persons for the purpose of operating a restaurant in competition with the respondent's restaurant. This suit was tried on the theory that the lease of the restaurant gave Deborah Preston exclusive right to conduct a restaurant in the Sierra Madre hotel property.

█ The lease does not specifically restrict the use of the premises to that of the restaurant business. It merely demises "All the space in the Hotel Sierra Madre . . . *necessary to do the restaurant business*". That language may be susceptible of construction implying that the lease of premises was not necessarily restricted to a use only for the restaurant business. The lease does further provide that the lessor may reenter the premises for failure to pay rent when it is due, and "if default shall be made in any of the covenants *herein contained*". Section 1930 of the Civil Code provides that:

"When a thing is let for a particular purpose the hirer must not use it for any other purpose; and if he does, he is liable to the letter for all damages resulting from such use, *or the letter may treat the contract as thereby rescinded.*"

The preceding section of the code has been held to apply to the leasing of real property, as well as to the hiring of personal property. (*Isom* v. *Rex Crude Oil Co.*, 147 Cal. 659, 661 [82 Pac. 317]; 15 Cal. Jur. 672, sec. 81.) █ Unless the lease specifically limits the use of the property to a particular purpose, or that restriction is necessarily inferred from the language which is employed, the lease may not be forfeited on account of the mere use of the property for another purpose even though that be an illegal use prohibited by statute, for the reason that forfeitures of leases are not favored by the law. But under such circumstances the lessor will be compelled to resort to a suit for damages or for injunctive relief to compensate him or to prevent a continued unauthorized use of the premises.

The appellant concedes at page 92 of her opening brief that the lessee was not restricted by the terms of her lease to use the demised property exclusively for conducting a restaurant therein, and upon the contrary admits that she might conduct any other lawful business in the leased premises. She says in that regard:

"Under the lease, she (Deborah Preston) is probably not even obligated to conduct a restaurant but might, under the provisions thereof, conduct any other kind of lawful business."

By her preceding language the appellant admits that section 1930 of the Civil Code has no application to the facts of this case. That section merely declares that a contract may be treated *as rescinded* on account of a breach of covenant not to use the property for a purpose different from that which is specified in the lease "when a thing is let *for a particular purpose*". If the property in question was not leased "for a particular purpose", then there is no statutory provision authorizing the forfeiture of a lease merely because it may be used for an illegal purpose. The remedy for such illegal use of leased property is a suit for damages or injunctive relief.

That rule is concisely stated in 2 Tiffany on Landlord and Tenant, page 1359, section 193, where it is said:

"The fact that the tenant uses the premises for an illegal purpose does not, in the absence of a statutory provision to that effect, *give the landlord a right to terminate the tenancy.*"

In 16 Ruling Case Law, page 1115, section 633, it is said:

"It is the general rule that the breach by the lessee of the covenants or stipulations on his part *contained in the lease* does not work a forfeiture of the term in the absence of an express proviso to that effect in the lease, the lessor's remedy being by way of a claim for damages."

Section 634 states:

"Where the lessor's right of re-entry is in terms *restricted to the breach of specified covenants of the lessee, this impliedly excludes the right to re-enter for the breach of other covenants.*"

It is true that section 337a of the Penal Code is deemed to constitute a part of the lease in the present case. (*Brown* v. *Ferdon,* 5 Cal. (2d) 226, 230 [54 Pac. (2d) 712]; secs. 1643 and 1656, Civ. Code; 6 Cal. Jur., 310, sec. 186.)

But the statutory restriction against using property for conducting a book-making enterprise or for accepting, recording, holding or forwarding any bet or wager on the result of any contest or race between men or beasts contrary to section 337a of the Penal Code does not necessarily authorize the rescission of the lease for violation of the statute in the absence of a specific or implied provision in the lease for cancellation on that account. Neither section 1689 nor section 3406 of the Civil Code specify as grounds of rescission of a contract the use of the property for a purpose other than that which is specified in the instrument. Section 3406 does authorize the rescission "where the *contract is unlawful*". But the *contract* in this case is not unlawful even though the property ·may ·have been subsequently used for an unlawful purpose.

■ We are of the opinion that section 1930 of the Civil Code should be read in connection with the preceding sections which specify the grounds upon which a contract may be rescinded. ■ A lease may be terminated only when it is procured by fraud, for lack of consideration or for *breach of expressed or implied covenants contained in the instrument*. ■ Conditions involving a forfeiture of a lease must be strictly construed against the party in whose behalf they are invoked. (Civ. Code, sec. 1442.)

■ In support of the findings and judgment that the leased *premises* were not used for an illegal purpose in conflict with the provisions of section 337a of the Penal Code, it is reasonable to assume that even though the lessee of a restaurant personally accepted money as an accommodation to her customers to be placed on horse races in violation of the penal statute, it does not necessarily follow *that the property* was thereby used for the purpose of conducting a book-making enterprise or that the restaurant business was thus maintained for an illegal purpose.

Moreover, the court found, in effect, that if there was a violation of section 337a, it was so slight and trivial a violation of the implied covenant that it does not constitute ground for terminating the lease on that account. It does appear that Deborah Preston, on several occasions did accept money, as an accommodation to her customers in the restaurant business, to be placed as bets on horse races, but that she invariably turned the money over to the parties for whom it was intended, and that she did not *maintain the restaurant business* as a book-making enterprise, nor did she act as an agent

for any other person for that illegal purpose. She neither used her own money nor personally bet on horse races. She believed that all of the money which she handled in that manner, as an accommodation to her restaurant customers, was legally received and placed in accordance with the "parimutuel betting system". There is ample evidence to support the implied findings that the lessee, at all times, conducted a legitimate restaurant business, and that she did not maintain or use the restaurant property *for an unlawful business* in violation of the penal statute. Even though her personal conduct may have constituted a violation of section 337a, it does not follow that it resulted in a breach of lease which would justify its forfeiture, or that the restaurant business or property was used for that illegal purpose.

The lessee's receipt of money from her restaurant customers, to be delivered to others as wagers on horse races, is accounted for by the fact that the Hotel Sierra Madre, in which building the restaurant was located, was headquarters for individuals who owned race horses and for those who were especially interested in that pursuit. One of the chief issues in this case was based on an allegation that the lease was breached by the lessee's failure to exercise special care in preparing and serving meals on trays to the customers in the hotel. The delivery of wagers on horse races through the medium of the lessee was also for the special accommodation of the customers of the hotel. The court, in effect, so found.

In 35 Corpus Juris, at page 1064, it is declared that a lease may be terminated only for a substantial breach thereof, and not for a mere technical or trivial violation. It is there said:

"Trivial breaches of covenants have been held insufficient to work forfeiture. The breach of *an implied covenant* will not work a forfeiture of a lease."

Certainly the breach of an implied covenant will not result in a forfeiture of a lease unless the instrument declares that it shall be so construed. If a lease fails to specify that the demised premises shall be used only for a designated business, the inference is that it may be used for other appropriate purposes. The present lease merely demised "space" in the building "*necessary to do* the restaurant business". We may reasonably assume that language meant that space in the building was thereby leased, *large enough* or *extensive enough* in which to conduct a restaurant business. On the

doctrine of construing the language of a lease most strongly against one who seeks thereby to forfeit the lease, we may say the quoted language in the present case does not prohibit the use of the space rented for some other lawful and appropriate purpose. The most that may be said of section 1930 of the Civil Code, upon which the appellant relies for cancellation of the lease, is that "when a thing is let *for a particular purpose*", the lessor, in the event of a breach of that covenant, may exercise an option to sue for damages or for rescission of the contract. Since the use of the premises in this case was not specifically prohibited for another purpose, and since the alleged violation of section 337a of the Penal Code constituted a violation of a mere *implied covenant*, and the handling of funds by the lessee, incidental to horse racing, was specifically found by the trial court to be for the accommodation of customers, and a mere technical and trivial violation of law, we are of the opinion we may not interfere with the province of the court in its determination that the lessee's personal violation of section 337a of the Penal Code was not an unauthorized use of the property, under the circumstances of this case. It was not grounds for forfeiture of the lease.

It appears that the lessee did not intend to violate the law against betting on horse races. She believed that the transactions in which she accommodated customers in her restaurant by conveying their bets to another person who placed them with the interested parties constituted the pari-mutuel system of betting and was lawful under the provisions of the Horse Racing Act. (Stats. 1933, p. 2046; Deering's Supp. for 1935, p. 767, Act 3421.) The acts complained of occurred not later than February, 1938. It was not until June, 1938, that the Supreme Court determined for the first time that section 337a of the Penal Code provides for an offense separate and distinct from the provisions of the Horse Racing Act. (*In re Walker,* 11 Cal. (2d) 464 [80 Pac. (2d) 990, 117 A. L. R. 825].) Assuming that her conduct was in violation of section 337a of the Penal Code, it appears that the appellant could hardly complain of those acts as damaging to her property, for she was herself not only guilty of betting in a similar way on horse racing, but for some time her hotel clerk, Frank Fishback, accepted bets from the appellant and also from numerous guests of her hotel, with her

knowledge, to be taken by him and placed with the proper parties at the race track. Mr. Fishback testified in that regard:

"Q. Did Mrs. Keating ever give you any money to place as a bet on a horse race at any time? A. Yes. . . . When I would be going down to the track. . . . Q. Did you at any time tell Mrs. Keating that you had ever received any money from any guests to be placed as a bet on a horse race? A. Why, yes. Q. You did? A. Some days when I would be going to the track I used to take money, as I say, bets from Mrs. Keating down there."

There is an abundance of evidence to support the implied finding of the court that the lessee was not using the leased property for the purpose of conducting a book-making business, although she did take some money from her restaurant customers to be placed as bets on horse racing, as an accommodation to her patrons as well as to the guests of the hotel. Many hotel guests ate their meals at the restaurant. An accommodation to a customer of the restaurant was often also a favor to the hotel guests. Under such circumstances, we are of the opinion the trial court was justified in refusing to terminate the lease on account of the lessee's alleged violation of section 337a of the Penal Code.

Moreover, the appellant waived her right to terminate the lease for violation of section 337a of the Penal Code by demanding and receiving rent for the premises which accrued after full knowledge of that asserted breach of implied covenant. The violation of that penal statute may not be deemed to be a continuing covenant so as to avoid the effect of the waiver on that account. The Farmers & Merchants National Bank of Los Angeles was the original lessor of the restaurant property. The lease and the title to that portion of the hotel property was assigned and conveyed to the appellant, Helen R. Keating, January 29, 1937. Mrs. Keating had heard rumors which led her to believe Deborah Preston had violated that statute as early as November or December, 1936. She had definite information on February 19, 1937, from which she positively knew that the statute had been violated. Under the terms of the lease the rent became due and payable on the 5th of each month for "the previous calendar month". On March 4th, the appellant served Deborah Preston with notice to pay the rent due for the month of February. The following day, March 5th, that installment of

rent for the previous month was paid and accepted by the appellant. That acceptance of rent for the month of February, during which she had actual knowledge of the alleged violation of section 337a of the Penal Code constituted a waiver of the breach complained of. The court specifically determined by its findings that the asserted breach of covenant was waived in that manner.

The authorities are uniform to the effect that the forfeiture of a lease for breach of covenant, with full knowledge thereof on the part of the lessor, is waived by acceptance of rent which accrues after the breach. (*Jones* v. *Maria,* 48 Cal. App. 171 [191 Pac. 943]; *Inman* v. *Schecher,* 86 Cal. App. 193 [260 Pac. 605]; 15 Cal. Jur. 787, sec. 205; 2 Tiffany's Landlord and Tenant, 1387, sec. 194 i. (b); 35 C. J. 1080, sec. 255.) The present case is a clear example of circumstances under which a landlord is estopped from terminating a lease for use of the premises contrary to an implied covenant by demanding and receiving rent which accrued after the asserted breach, with full knowledge of the illegal use of the property. This does not mean that the lease might not be forfeited by a subsequent similar breach after the waiver occurred. That situation, however, is not involved in this suit.

The case of *Myers* v. *Herskowitz,* 33 Cal. App. 581 [165 Pac. 1031], upon which the appellant relies, is not in conflict with what we have previously said regarding the principle of waiver of a breach of covenant. All that case may be said to determine in that regard is that the circumstances clearly indicated that the landlord did not intend to thereby waive the breach of contract.

In the injunction proceeding, entitled *Preston* v. *Keating,* the court adopted findings and rendered judgment favorable to the plaintiff, restraining the defendant and her agents from renting other space in her hotel or permitting any person other than the plaintiff to conduct therein a competing restaurant, lunch-room, coffee-shop or place where meals are regularly served, during the term of the lease in question. The court found that the plaintiff was granted by the terms of the lease the exclusive privilege of maintaining a restaurant in that building. The court further found that the Hotel Sierra Madre is a small thirty-room, two-story hotel; that the plaintiff is dependent to a considerable extent upon the patronage of the guests for the successful maintenance of her restaurant; that soon after the execution of the lease the

defendant procured the closing and barring of the doorway intervening between the restaurant and the lobby of her hotel, to the detriment of the plaintiff's business; that the defendant refused to permit the altering and construction of an adequate wash-room and toilet in the restaurant to conform to the city ordinance as a prerequisite to the issuance of a liquor license; that the defendant discouraged and prevented many of the guests of her hotel from patronizing the restaurant, to the great damage of the plaintiff; and that the defendant threatened to lease other space in her hotel to be used in conducting a competing restaurant.

We are of the opinion the findings and judgment in the injunction proceeding are amply supported by the evidence. We are satisfied from the language of the lease that it was the intention of the parties thereto to demise to the lessee the exclusive right to operate a restaurant in the hotel building. (*Belvedere Hotel Co.* v. *Williams*, 137 Md. 665 [113 Atl. 335, 14 A. L. R. 622]; 90 A. L. R. 1457, note.) The lease clearly grants and demises:

"*All the space* in the Hotel Sierra Madre . . . necessary to do the restaurant business, including the restaurant, kitchen and store rooms, . . . with the appurtenances. . . . The lessee may also serve various beer, wines and liquors not only on the leased premises *but also in any part of the hotel.*"

"All the space . . . necessary to do the restaurant business" in the Hotel Sierra Madre was leased to the plaintiff. No space to be used for a restaurant business was reserved to be rented to others. Moreover, the lessee was authorized to dispense liquor "in any part of the hotel". It seems clear that the parties to that lease contemplated that the lessee should have the sole and exclusive right to operate a restaurant business in that hotel. The facts and surrounding circumstances indicate that there is not justification for another competing restaurant to be established in that small hotel with its limited patronage.

In the Belvedere Hotel Company case, *supra,* the lease demised "to the party of the second part the barber shop and manicuring concession in its hotel for a term of two years". The court held that "Under the lease of May 10, 1920, the appellee had, during the continuance of this lease, *the sole and exclusive right* to operate a barber shop and a manicuring establishment in the Hotel Belvedere."

When a covenant in a lease prohibiting a lessor from demising other property in the same building or vicinity to be used for conducting a competing business tends to create a monopoly in the lessee or constitutes a limitation in restraint of trade, it will be strictly construed against the lessee. (2 Underhill on Landlord and Tenant, p. 741, sec. 453.) The modern trend of authorities, however, is to construe such statutes as section 1673 of the Civil Code, and contracts between individuals intended to promote rather than to restrict a particular business, ''In the light of reason and common sense'' so as to uphold reasonable limited restrictions. (*Great Western Distillery Products, Inc.*, v. *John A. Wathen Distillery Co.*, 10 Cal. (2d) 442, 446 [74 Pac. (2d) 745].) In the case last cited it is said with respect to the construction of section 1673:

''Statutes are interpreted in the light of reason and common sense, and it may be stated as a general rule that courts will not hold to be in restraint of trade a contract between individuals, the main purpose and effect of which are to promote and increase business in the line affected, merely because its operations might possibly in some theoretical way incidentally and indirectly restrict trade in such line.''

The circumstances of the present case bring it within the exception to the general rule which is concisely expressed in the preceding quotation.

The appellant contends that it is inconsistent for Deborah Preston to assert, in the suit to terminate the lease, that the instrument does not specifically restrict the use of the demised space in the hotel for the operation of a restaurant, and on the contrary, to assert, in the injunction proceeding, that she obtained *the exclusive privilege of operating a restaurant* in the hotel building. We do not perceive that those contentions are necessarily inconsistent. One may be granted all the space in a hotel building necessary to accommodate a restaurant, without definitely requiring the lessee to conduct that particular business. In other words, the space is demised with the option of running a restaurant therein, or some other lawful business. But the language clearly indicates that if the restaurant is maintained, the lessee shall have the exclusive right to conduct that kind of a business in the hotel. The fact that the lease specifically authorizes the lessee to serve liquor, in connection with her restaurant business, ''in any part of the hotel'' reinforces that construction of the lan-

guage of the instrument. Clearly it would be inequitable for the defendant to be permitted to thus damage or possibly destroy the respondent's established business.

There is no merit in the contention that this suit is barred by the pendency of another action. The respondent did previously commence a suit against the Farmers and Merchants National Bank merely to enjoin the closing of the intervening doorway. The appellant was not a party to that suit. Moreover, that suit was dismissed. It did not seek to restrain a threatened leasing of space in the hotel for a competing restaurant, as this proceeding does.

It is immaterial and harmless that the court found the correct street number of the hotel to be "30" West Central Avenue, instead of number "36" as the lease stated. It appears that one of those numbers designates the main entrance to the hotel, and the other one indicates the front entrance to the restaurant. The description and location of the space which was leased for restaurant purpose is not in dispute.

The judgments are affirmed.

Paulsen, J., *pro tem.*, and Tuttle, J., concurred.