UTICA SQUARE, INC., a corporation and Clarke's Good Clothes, Inc., a corporation, Plaintiffs in Error,

v.

RENBERG'S INC., a corporation, Defendant in Error.

No. 40426.

Supreme Court of Oklahoma.

March 24, 1964.

Fenelon Boesche, Richard B. McDermott, T. Hillas Eskridge, Tulsa, Boesche, McDermott & Eskridge, Tulsa, of counsel, for plaintiffs in error.

C. H. Rosenstein, Aaron Mesirow, David L. Fist, Tulsa, Rosenstein, Mesirow & Fist, Tulsa, of counsel, for defendant in error.

WILLIAMS, Justice.

The principal question to be decided in this appeal is whether a lease executed by a lessor to a third party violated a restrictive covenant in a prior lease executed by such lessor.

Defendant in error, Renberg's Inc., a corporation, hereinafter referred to as Renberg's, instituted this action for injunction against plaintiffs in error, Utica Square, Inc., a corporation, and Clarke's Good Clothes, Inc., a corporation, hereinafter referred to respectively as Utica Square and Clarke's.

Renberg's in its amended petition alleged that on August 11, 1955, it leased space from Utica Square in its Utica Square Shopping Center; that on July 28, 1956, such lease was amended; that such lease and amendment provided that Utica Square during the term thereof would not lease any space to any tenant for the purpose of retailing men's and boys' wear in competition with Renberg's; that Utica Square would insert in all future leases, other than leases which did not increase the sale of merchandise in competition with Renberg's to an amount greater than the area at that time used for such purpose, a provision prohibiting the using of such premises for the sale of men's and boys' wear. It was alleged further that Utica Square and Clarke's executed a lease which did not prohibit Clarke's from selling men's and boys'

wear; that Clarke's intends to engage in the sale of such merchandise; that such sales would constitute a violation of the provisions of the lease between Renberg's and Utica Square; that such sales by Clarke's would increase the total area in Utica Square Shopping Center used for selling men's and boys' wear in competition with Renberg's; that Clarke's had actual knowledge of the restrictive provisions of Renberg's lease with Utica Square prior to the execution of its lease; that Renberg's will suffer irreparable harm and injury unless Clarke's is enjoined and prevented from occupying the leased premises for the purpose of selling men's and boys' wear in competition with Renberg's.

After a full hearing the trial court issued an injunction against Clarke's and Utica Square. Clarke's was enjoined from selling or offering for sale in its Utica Square store any articles of men's or boys' wear at prices in substantially the same range as the price of similar articles offered by Renberg's. Utica Square was enjoined from authorizing Clarke's to sell or offer for sale articles of men's and boys' wear in violation of the injunction. From such adverse judgments and the overruling of their motions for new trial, Utica Square and Clarke's appeal.

For reversal Utica Square and Clarke's advance three propositions. The first is that "The Clarke's lease did not violate the restrictive agreement". The July 28, 1956 amendment amended only paragraph 7 of the lease of August 11, 1955. Such paragraph is entitled "Competition". Sub-paragraph (a) thereof provides that Utica Square will not lease any premises for the retail sale of men's and boys' wear "in competition with" Renberg's, with two named exceptions. That restriction does not apply to leases with any tenant then doing business in Utica Square nor to renewals or extensions provided said renewals or extensions shall not permit any present tenant to alter its operations of business to "compete more directly" with Renberg's.

Sub-paragraph (b) of section 7 provides that new leases may be executed to certain

named lessees, "for the purpose of expanding their present operations".

Sub-paragraph (c) of the amendment provides:

"Lessee further agrees that Lessor may make such future leases, and/or extensions or renewals thereof, which would not have the effect of increasing the total area used for the retail sale of men's and boys' wear of any and all kinds, including, but not by way of limitation, clothing, furnishings, accessories, headwear, footwear and sportswear, in competition with Lessee to an amount greater than the area now used for the purpose, plus the space which may at all times be permitted to be leased under exceptions 7b) and 7d)."

Clarke's and Utica Square state that "sub-paragraph c)" of section 7 of the amendment "is the portion of the covenant which is directly and critically involved in the decision of this case."

Prior to the execution of Clarke's lease, C. R. Anthony leased space in such shopping center, but at the termination thereof Utica Square refused to renew Anthony's lease. After Anthony's left, Clarke's leased most of the space theretofore held by Anthony.

Clarke's and Utica Square contend that Anthony's had been in competition with Renberg's in the retail sale of men's and boys' wear; that since Anthony's formerly occupied the space later leased to Clarke's the total area in the shopping center in competition with Renberg's in the sale of men's and boys' wear has not been increased as a result of the leasing of the Anthony space to Clarke's.

Mr. Hartman, manager of the former Anthony store in Utica Square, testified that Anthony's and Renberg's appealed to different segments of the buying public.

Mr. Greenberg, vice president of Street's (engaged in the men's ready to wear business), testified that Anthony's and Renberg's appealed to different segments of the

buying public. He further testified that recently he had discussed with Mr. Nix, president of Utica Square, the possibility of leasing a portion of the vacated Anthony space; that Mr. Nix advised him that Street's could not handle men's and boys' wear for the reason "he was obligated to the Renberg's so that we wouldn't be any more competition, as there was a clause in their lease."

Mr. Seidenbach, president of Seidenbach's store in Tulsa, testified that Mr. Nix recently told him during a discussion concerning the leasing of space that Utica Square had a restrictive agreement not to sell any men's and boys' clothes in the space leased by Anthony's.

Mr. George Renberg, president of Renberg's testified that Mr. Nix asked him why Anthony's and one other chain store were doing such a poor job at Utica Square though they were excellent organizations and very successful. Mr. Renberg testified that he told Mr. Nix "that these stores catered to a lower income group than was patronizing Utica Square". He further testified that Mr. Nix replied, " 'yes' ", " 'as much as I hate to admit it we are just not getting that type of traffic' ".

Mr. Nix testified that he did not recall talking to Mr. George Renberg concerning Anthony's; that "I will say again that its possible that I may have; I have consulted with George many times on various merchandising problems in the Square".

The trial court found as follows:

" * * * Among items offered for sale by C. R. Anthony Company during the term of its said lease, and as well by Renberg's, Inc., are men's suits, men's slacks, men's dress shirts, men's sport shirts, men's underwear, neckties, men's socks, boy's suits, junior or cadet suits, belts, accessories such as cuff links, the bars and the like, men's sweaters, boys' sweaters, men's raincoats, men's shoes, boys' shoes, blue jeans and knitted shirts. In the instances of men's and boys' suits a greater range of sizes, styles, and prices was offered by the Renberg store, and the Renberg stock of all of the said items were more extensive. In general, C. R. Anthony Company offered items which were lower in price than those offered by the Renberg store, and in each instance except one the Renberg store offered goods in each category which were higher in price than any offered by C. R. Anthony Company. In several categories of goods listed above the price range charged for the same by C. R. Anthony Company overlapped the price range charged by the Renberg store, with C. R. Anthony Company having some prices clearly below the Renberg range and with the Renberg store having some prices clearly higher than the C. R. Anthony Company range * * * C. R. Anthony did not stock or offer for sale men's tropical suits, men's overcoats, boys' topcoats, men's summer shoes, or formal wear, all of which items were carried by plaintiff in its store."

*     *     *     *     *     *

" * * * The Renberg premises are and were more elaborately and expensively decorated than those of C. R. Anthony Company. The fixtures of the Renberg store in Utica Square Shopping Center are and were more elaborate, more expensive, and generally of a more luxurious nature than those employed in the C. R. Anthony Company store. C. R. Anthony Company offered limited alteration services in connection with its sale of garments, but Renberg's, Inc., offered complete alteration and tailoring services in connection with the sale of such items. C. R. Anthony Company sold its goods for cash only, and the Renberg store offered credit upon a variety of terms. The Renberg store delivered goods upon request and accepted and executed mail orders while the C. R. Anthony Company store did neither."

*     *     *     *     *  :  *

"The retail merchandising operation of C. R. Anthony Company, as the same

was conducted from prior to August 11, 1955, to July 31, 1962, was not in competition with Renberg's Inc., in the retail sale of men's and boys' wear within the intent and meaning of Paragraph numbered 7 of the lease agreement of August 11, 1955, and within the intent and meaning of Paragraph numbered 7 as amended by the agreement of July 27, 1956."

Clarke's and Utica Square argue that "we say again that the text of sub-paragraph c) is plain and unambiguous, and that it means, as it says, that Utica Square, Inc., could grant new leases to sellers of men's and boys' wear of any and all kinds so long as it did not thereby expand the total area devoted to the sale of the same broad category of products in Utica Square Shopping Center over the area so devoted at the date of the agreement".

As previously noted herein sub-paragraphs (a) and (b) contain language limiting Renberg's competition in the Utica Square Shopping Center. The utilization of the phrases, "in competition with", "compete more directly" and "expanding their present type of sales operation" must be given importance. Paragraph 7 would be complete if such phrases were omitted therefrom. The inclusion of such phrases indicates that the parties thought that the mere selling of men's and boys' wear would not be detrimental to Renberg's; that such selling would be detrimental only if it were in competition with Renberg's. Giving due consideration to every part of the lease and amendment thereto the words "in competition with" mean more than merely selling articles of the same general type.

In the case of Freeling v. Wood, Okl., 361 P.2d 1061, 1063, 1064, we said:

"In construing the partnership agreement we must be cognizant of a certain statutory provision relating to contracts. Title 15 O.S.1951 § 157 provides:

" 'The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other.'

"In Perry Journal Co. v. Shaw, 204 Okl. 479, 231 P.2d 369, we held:

" 'The courts will not make over a written legal contract, nor enlarge or diminish rights or liabilities clearly and specifically provided therein.' "

▉ An action for injunction being of an equitable nature, we have examined the entire record and weighed the evidence. Reed v. Reed, Okl., 338 P.2d 350. The trial court's finding hereinabove set forth that Anthony's merchandising operation was not in competition with Renberg's in the sale of men's and boys' wear within the meaning of paragraph 7 of the lease agreement and paragraph 7 of the amendment thereto is not clearly against the weight of the evidence.

▉ The second proposition advanced by Clarke's and Utica Square is that "The Restrictive Covenant Is in Restraint of Trade —Violates Both the Policy of the State of Oklahoma and Its Statutes—and Is Void in Law." Clark's and Utica Square argue that the covenant under consideration is within the prohibition of Title 15, Section 217, Oklahoma Statutes 1961. Such statute provides: "Every contract by which any one is restrained from exercising a lawful profession, trade or business of any kind * * * is to that extent void." We do not agree.

In the case of Keating v. Preston, 42 Cal. App.2d 110, 108 P.2d 479, 486, the California Court had before it for consideration their statute (now § 16600 of Calif. Business and Professional Code) of identical effect and practically identical language to that of our statute just quoted. Therein, the Court made the following expression:

"When a covenant in a lease prohibiting a lessor from demising other property in the same building or vicinity to be used for conducting a competing business tends to create a monopoly in the lessee or constitutes a limitation in restraint of trade, it will be strictly

construed against the lessee. 2 Underhill on Landlord and Tenant, p. 741, sec. 453. The modern trend of authorities, however, is to construe such statutes as section 1673 of the Civil Code, and contracts between individuals intended to promote rather than to restrict a particular business, 'In the light of reason and common sense' so as to uphold reasonable limited restrictions. Great Western Distillery Products Inc. v. John A. Wathen Distillery Co., 10 Cal.2d 442, 446, 74 P.2d 745, 746. In the case last cited it is said with respect to the construction of section 1673: 'Statutes are interpreted in the light of reason and common sense, and it may be stated as a general rule that courts will not hold to be in restraint of trade a contract between individuals, the main purpose and effect of which are to promote and increase business in the line affected, merely because its operations might possibly in some theoretical way incidentally and indirectly restrict trade in such line.' "

Clarke's and Utica Square in their brief state "We do not dispute that the covenant in issue in this case would have been permissible in the law of New York, Massachusetts and California as a reasonable incident of a lawful contract between landlord and tenant."

We think that the facts and circumstances of the present case bring it within the exception to the general rule set forth in the above quotation from the California case.

Clarke's and Utica Square's last proposition is that "The Injunction Granted Below Is Too Broad in Any Event". They contend that "After elaborate resort in the findings to considerations other than price to justify the conclusion that Anthony's was not a competitor the Court now returns to price, and to Renberg's price at that, to define the scopy of its injunction."

The trial court found that Clarke's and Renberg's were in competition in downtown Tulsa and that if permitted to sell men's and boys' wear in the Utica Square Shopping Center, Clarke's would there compete with Renberg's. It further found that Clarke's and Renberg's "both sell at retail the same or similar items of men's and boys' wear, at substantially the same prices or price ranges, and with substantially the same customer accomodations and services".

Utica Square and Clarke's in brief state, "Both Clarke's and Renberg's are leaders in the market for clothing in Tulsa and they are competitors of long standing in this field." In Clarke's supplemental answer, it "admits that it intends to compete with plaintiff in the sale of men's and boys' wear to the extent permitted to it under the terms of its lease of June 26, 1962."

In pertinent part the injunction is as follows:

"* * * Clarke's Good Clothes, Inc., is hereby enjoined and restrained from selling or offering for sale, * * articles of men's and boys' wear of any and all kinds * * * in the same or substantially similar price ranges as the present price ranges of the plaintiff [Renberg's] * * *."

In order to enforce the restrictive covenant and thereby protect Renberg's rights, the trial court found it necessary to remove an element of the competition existing between Clarke's and Renberg's. By requiring Clarke's to sell in another price range from that in which it now wells, the trial court in effect forced Clarke's to do one of two things. If Clarke's chooses to sell in a lower price range, it must purchase goods of a lower quality or operate on reduced profits if not at a loss. If Clarke's chooses to sell in a higher price range, it must purchase goods of a higher quality or price itself out of business.

Clarke's and Utica Square argue that "as written, the injunction would prevent Anthony's from continuing the business which had antedated Renberg's in Utica Square and which Renberg's contends was not competitive". We do not consider such argument applicable. The evidence was

that Clarke's and Renberg's sought the same segment of the public for their customers and that Renberg's and Anthony's did not.

Affirmed.