[Civ. No. 743. Fourth Appellate District.—April 11, 1932.]

A. W. McPHERSON et al., Respondents, v. THE EMPIRE GAS & FUEL COMPANY (a Corporation), Appellant.

O'Melveny, Tuller & Myers and Homer I. Mitchell for Appellant.

Walter J. Little, William B. Gilroy and Randall & Bartlett for Respondents.

THOMSON, J., *pro tem.*—This is an action against two corporations, each named The Empire Gas & Fuel Company. One corporation was organized under the laws of Colorado and the other was organized under the laws of Maine. The Maine corporation is the appellant, the Colorado corporation having assigned to the Maine corporation, prior to the incidents complained of, all of its right, title and interest under the lease and contract which are the subject of the controversy. Two causes of action are set forth in the complaint. The first is a cause of action to have plaintiff's title quieted to the property in question and is the ordinary form of a quiet title action. The second cause of action alleges the chain of title, the execution and delivery of said lease and said contract, the breach of said contract, the service of default notice on appellant by respondents, the obligation of appellant to assign said lease to respondents by reason of said default and to deliver possession of said

property to respondents, and the failure of appellant to do so. The prayer of the complaint asks for a decree adjudging that defendants have no estate or interest in the premises or in said lease; that defendants be enjoined from asserting any claim to said premises adverse to respondents; that appellant be ordered to account to respondents for oil and gas produced after the date of alleged forfeiture; and such further relief as the court may deem proper.

The trial court gave judgment for plaintiffs and against defendants quieting title in plaintiff and declaring that neither of defendants has any right, title or interest in the land covered by said lease nor in the two oil-wells on said land and that plaintiffs are entitled to immediate possession thereof; ordering defendants to execute to plaintiffs an assignment of said lease; and decreeing that plaintiffs recover from defendants the sum of $28,209.87, the gross receipts from said well from July 1, 1928, to the date of accounting. The appeal is taken by the Maine corporation from said judgment.

In 1922 the Calitroleum Oil & Gas Company secured a lease from the United States government giving it the exclusive right for the period of twenty years to extract oil and gas from a certain 120-acre parcel of land in the Maricopa district in Kern County, together with an easement for such use of the surface of the property covered by said lease as was necessary to the full enjoyment of the rights conferred by said lease. On May 20, 1924, said Calitroleum Oil & Gas Company assigned to appellant's predecessor, said Colorado corporation, all of its rights in the said lease from the United States government in so far as it appertained to a certain forty-acre tract of said land, which said assignment was approved by the Secretary of the Interior as required by law. At the same time said Calitroleum Oil & Gas Company, as first party, entered into an agreement with appellant's said predecessor, the said Colorado corporation, as second party, by the terms of which second party agreed to conduct and diligently prosecute a continuous drilling campaign for the development of oil and gas on said forty-acre tract, until at least four oil-wells are drilled, second party to be allowed thirty days after the completion and testing of a well before it shall be required to commence operations on the next well, and provided

that additional wells after the first well are required to be drilled only in case the preceding well produces not less than 300 barrels of oil per day for a thirty-day period of production immediately following discovery. The contract provided that, in the event that the production from the preceding well does not amount to such average production, second party may, at its option, upon written notice to first party, be relieved from all obligations to drill additional wells on said land, in which event second party may keep and hold and operate any and all oil-wells producing oil or gas in paying quantities during the life of the lease, and in such event second party shall assign to first party the lease on said forty acres, subject to the rights of the second party to any wells theretofore drilled. This contract also provided that, in the event of the breach by the second party and its failure to remedy such default, or to commence in good faith appropriate operations to remedy such default, within thirty days after written notice thereof has been served upon second party, all rights of second party in the agreement shall cease and determine, and the second party agrees thereupon to execute to the first party an assignment of the lease on said forty acres. Said Calitroleum Oil & Gas Company transferred to respondents its right, title and interest in the property and in said United States government lease and said contract dated May 20, 1924. Appellant and its said predecessor have drilled two wells on said forty acres at a cost of $240,000. The record does not show how much profit has been received by appellant or its predecessor from production of oil and gas from the two wells. A number of notices of default and demands of prompt performance were served on appellant by respondents, which were afterward waived. Thereafter on June 1, 1928, respondents served another notice to commence drilling a third well or to assign the government lease back to respondents. Appellant never did comply with said demand. On July 25, 1928, respondents sent appellant a letter which will be hereafter referred to. On August 18, 1928, respondents again notified appellant of its default by reason of its failure to drill a third well and demanded an assignment of the lease. Appellant continued to operate the wells until the date of judgment and the evidence shows that, after paying to respondents the twenty-eight per cent

royalty provided for in the contract, appellant's gross receipts from production after July 1, 1928, amounted to $28,209.87.

Appellant urges a reversal of the judgment of the trial court on many different grounds. But in view of our conclusion as to the effect of said letter of July 25, 1928, we deem it unnecessary to discuss these various grounds or to comment on the numerous authorities cited in support thereof.

■ We are satisfied that the trial court correctly decided that defendant and appellant breached its contract of May 20, 1924, in not drilling, or at least commencing to drill, the third well on the premises, and that respondents would have been entitled to repossess all of the property covered by said contract on or after July 1, 1928, had it not been for the letter which respondents sent to appellant dated July 25, 1928, which was admitted in evidence, and reads as follows:

"July 25, 1928.

"Empire Gas & Fuel Company,
    "Maine Corporation,
        "850 Subway Terminal Building,
            "Los Angeles.
"Gentlemen:

"As you have failed to remedy the default of which we notified you under date of June 1st, 1928, under the agreement entered into between the Calitroleum Oil & Gas Company, a California Corporation, and The Empire Gas & Fuel Company, a Colorado Corporation, dated May 20th, 1924, which agreement covered oil operations on the Southwest quarter of the Southeast quarter of Sec. 4, T. 11 N. R. 23 W., S. B. B. & M., Kern County, Calif., we hereby notify you that all your rights under said agreement cease and determine; and we demand that you assign to us the Government Lease covering this land, as provided in Section 19 of said agreement.

"*We take notice that you are at this time operating Well No. 1 only, and you may continue to operate same so long as you pay us 28% net of the oil and casing head gasoline produced from said property, and provided same is paid promptly on the 20th day of the month following its production.* (Italics ours.)

"You have violated the provisions of Section 11 of said agreement and thereby abandoned your right in Well No. 2.

"Royalty payments to us must be met. You may not expend money for any purpose and charge any part to us.

> "J. D. KNEEN and
> "A. W. McPHERSON,
> "By A. W. McPHERSON."

The notice of June 1, 1928, was unconditional and forfeiture would have followed in due time, but the letter of July 25, 1928, shows that the respondents considered said contract still in force because it expressly stated that appellant might remain on the premises and produce oil and gas from well No. 1. Under these circumstances it could not be said that the rights of appellant had terminated and were at an end, nor does it appear that respondents considered appellant's rights at an end. Respondents in their brief on appeal refer to this letter and state: " . . . a reading of the letter indicates that respondents were still willing to give appellant every opportunity to assign the lease to them and to thereby protect its investment in the property." As stated above, the contract provided that, if the production from a well did not amount to an average of 300 barrels per day, appellant at its option upon written notice to first party, would be relieved from all obligation to drill additional wells on said land, in which event second party might keep and hold and operate any and all wells producing oil or gas in paying quantities during the life of the lease, and in such event appellant was obligated to assign to respondents the lease covering said forty acres, subject to the right of appellant to any wells theretofore drilled.

If, at the time respondent sent said letter to appellant, respondents were still willing to give appellant an opportunity to protect its investment under the terms of the contract, it follows that respondents still recognized that the contract was in force and effect.

The circumstances of the case also indicate that the letter of July 25, 1928, was intended to modify the unconditional notice of default and demand for performance dated June 1, 1928. The evidence shows that there were two written deviations from the original contract. The first was by a written amendment dated December 31, 1924, under which

the original contract of May 20, 1924, was changed so that appellant's predecessor would not have to drill well No. 1 to a depth of 4,300 feet but need drill to a depth of only 3,920 feet; and on April 12, 1926, said original contract was again modified so that well No. 2 need not be commenced until thirty days after the completion of a production test on well No. 1, made after said well No. 1 had been redrilled, and reducing the royalty to be paid to respondents from thirty-five per cent to twenty-eight per cent. Many conferences ensued between representatives of appellant and representatives of respondents, at which the drilling of well No. 2 was discussed, appellant being reluctant to drill a third well while complex and troublesome water conditions in well No. 2 continued to exist, and while certain work was being conducted on adjoining land which might clear up these unfavorable water conditions. On January 28, 1928, respondents sent to appellant a written demand for performance of the drilling requirements and notice that the lease would be canceled if appellant did not perform this provision of the contract. After a conference between the parties, and on March 14, 1928, respondents sent appellant a letter stating that appellant might disregard respondents' notice of cancellation and respondents agreed not to issue another cancellation notice until May 15, 1928. On June 1, 1928, a notice was sent to appellant calling attention to its failure to drill wells as provided in said drilling contract, and appellant was notified that, if it did not commence drilling operations within thirty days, the lease would be canceled. In other words, on a number of previous occasions a notice of default and demand of performance was given by respondents to appellant, and, after the time for forfeiture, respondents relented and waived the effect of such notice. Under such circumstances it is apparent that the portion of the letter of July 25, 1928, which is italicized above, is inconsistent with the declaration that appellant's rights were forfeited or terminated under the contract of May 20, 1924, and said letter therefore constituted another waiver. In stating that appellant might continue to operate well No. 1 under conditions which were identical with the requirements of the contract of May 20, 1924, the letter of July 25, 1928, in effect, recognized that the contract was still in effect. The letter therefore made

the notice of June 1, 1928, ineffectual, and without such notice and demand of performance, under the terms of said contract, there could be no forfeiture. The evidence also shows that the royalty from the wells was paid by appellant to respondents promptly and accepted by respondents up to the time of trial.

The general rule of law in this state concerning forfeitures is clearly stated in 6 California Jurisprudence, 362: "A forfeiture stipulated in a contract will be enforced if the rights of the parties cannot otherwise be preserved. But a contract is not to be construed to provide a forfeiture, unless no other interpretation is reasonably possible. The law does not favor forfeitures, and will not enforce them in the absence of clearly stated conditions of forfeiture. As provided by the Civil Code, 'A condition involving a forfeiture must be strictly interpreted against the party for whose benefit it is created.' " (Sec. 1442, Civ. Code.)

That the breach of a contract by an obligor upon which a forfeiture might be predicated may be waived by the obligee and his right to forfeit suspended is well recognized here. In 12 California Jurisprudence, 641, it is said: "The right to declare a forfeiture for breach of condition in a contract is a matter entirely for the benefit of the person entitled to assert it, and may be waived by him. The waiver may be by written agreement, or by parol, or it may be implied from the acts and conduct of the party. While it has been said that a waiver of forfeiture is sustainable upon a principle similar to an estoppel, it is settled that the waiver may be sustained by circumstances which do not present the strong equities required to sustain an estoppel. And it may be stated broadly that if, in any negotiations or transactions with the defaulting party after knowledge of the forfeiture, the party entitled to claim it recognizes the continued validity of the contract, or does acts based thereon, or requires the defaulting party, by virtue thereof, to do some act or incur some trouble or expense, the forfeiture, as a matter of law is waived. This latter rule has been frequently applied as against insurance companies, landlords, and vendors. The fact that the contract is in writing does not affect the rule, for parol proof of a waiver no more violates the parol evidence rule than does evidence by parol of the actual performance of the conditions. It follows

from the fact that forfeitures are abhorred that a waiver of forfeiture is favored, and requires less evidence to establish than is required to establish a forfeiture. Indeed, it has been held that slight evidence of waiver is sufficient." (*Haserot* v. *Keller,* 67 Cal. App. 659, 669 [228 Pac. 383]; *Redd* v. *Garford Motor Truck Co., Inc.,* 205 Cal. 245, 249 [270 Pac. 447]; *Taylor* v. *Hamilton,* 194 Cal. 768, 776 [230 Pac. 656]; *J. Frank & Co.* v. *New Amsterdam C. Co.,* 175 Cal. 293, 296 [165 Pac. 927]; *Boone* v. *Templeman,* 158 Cal. 290, 296 [139 Am. St. Rep. 126, 110 Pac. 947].)

It is rather clearly established by the record before us that the respondents were acting within their rights in giving appellant the notice of June 1, 1928, requiring it to perform the obligations of its contract or quitclaim, or suffer the penalty of a complete forfeiture of all its rights in the property. It is also obvious that under the contract appellant had three courses of conduct open to it after its receipt of the notice of June 1st; first, it might commence its drilling operations within thirty days; second, it might quitclaim the property and reassign the lease, reserving to itself the oil-well or wells on said land producing oil or gas in paying quantities; and third, by failure to follow either of the courses just mentioned, it faced the probability of a complete forfeiture of its rights under the lease and the loss of the wells already drilled. The right of election of which of the three courses it should follow was left entirely to appellant. Respondents could enforce only one of them, viz., the complete forfeiture of the lease and quitclaim of all appellant's rights in the property and its reassignment to them of the government lease. The respondents could get either all of the leased property or none of it under the terms of their contract unless appellant acted under one of its options. In enforcing their right of forfeiture respondents of necessity were required to stand on the letter and spirit of their contract. They could not relinquish parts of their right of forfeiture and enforce others. In their letter of July 25, 1928, they offered to permit appellant to continue to retain possession of and operate well No. 1 "so long as you pay us 28 per cent net of the oil and casing head gasoline produced from said property, and provided same is paid promptly on the 20th day of the month following its production". No such plan of forfeiture was provided for in any contract.

Appellant acted upon the offer, continued in possession of the well, operated it, paying all expenses of operation, and paid the royalties in the amount and at the times specified up to the time of the trial. Respondents accepted the royalties and still retain them. We have concluded that this letter and the actions and conduct of the parties after its delivery to appellant were a departure from the rights of forfeiture under the lease and the notice of June 1, 1928, and was therefore a waiver of the notice and the rights of forfeiture following its delivery to respondent, which rights of forfeiture could only be revived by giving another notice of breach of the conditions of the lease with requirements to remedy the breach within thirty days in accordance with the forfeiture clause of the agreement. No such notice was given by respondents.

From what we have just said it is apparent that appellant was not a trespasser in its operations on the leased property and that the court below was in error in giving judgment against it for $28,209.87, the value of the oil it produced from the leased property.

Judgment reversed, with directions to enter judgment in favor of appellants.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on April 30, 1932, and an application by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 9, 1932.