[Civ. No. 3202.   Fourth Dist.   Mar. 3, 1943.]

C. S. VAN DOREN, Respondent, v. W. E. THURBER, Appellant.

Jesse W. Curtis, Jr., and Brittan & Mack for Appellant.

Harry H. Parsons for Respondent.

BARNARD, P. J.—This is an action for declaratory relief, to cancel a lease of certain mining claims and to enjoin the defendant from going upon the claims or claiming any interest therein.

The lease, which was executed on March 8, 1939, recited that the claims were leased to the lessee for the sole purpose of exploring, operating, mining, developing and removing minerals "and to sell the products thereof and to pay to the lessor the royalties hereinafter particularly set forth." It provided for a royalty of $1.00 per ton on ore of a certain mineral content with a proportionate higher or lower royalty for ore of a greater or less mineral content. It provided that the lessee was to enter the premises and diligently work the same in miner fashion and in a manner necessary to take out the greatest amount of minerals that the property would yield "at least to the amount of Seventy (70) tons per month." This was followed by a provision that the lessee "agrees and guarantees that at no time during the life of this contract and lease while same is in effect shall the production from said mine be less than seventy (70) tons, (2,000 lbs.) per month of forty (40%) manganese ore, and that the sum of Seventy ($70.00) Dollars per month commencing on the 8th day of April, 1939, will be on the 8th day of each and every month thereafter, while this contract is in full force and effect deposited in said bank to the credit of said C. S. Van Doren time being the essence of said payments of minimum royalties." It was then provided that this minimum payment of $70 per month "shall be considered as advanced royalties and that the Lessee may remove all minerals, metals, ores and/or metallic substances upon which the agreed royalties have been paid, if not removed prior to the payment thereof at any time while this lease is in full force and effect."

The lease further provided that if the lessee should abandon the premises and should fail to do any work thereon for a period of 180 consecutive days such failure should be conclusive evidence of an abandonment of the lease, and that in case of any default with respect to any provision of the

lease notice thereof must be given and if the default for which notice was given was not remedied within thirty days the rights of the lessee should then terminate.

Previous to the making of this lease the plaintiff had mined about 450 tons of ore which he had been unable to sell and which remained on the dump when the defendant took over under this lease. The evidence shows, without dispute, that the ore from this mine was of a lower grade than that mentioned in the lease and that there was no market for the ore contained in these claims until shortly before this suit was filed, when war conditions brought about a change which developed such a market. While it is conceded that the appellant did no actual mining on this property, because there was no market for the ore, he took possession in June, 1939, and thereafter spent about $3,100 upon the claims building a road, a tent house, digging a well and in sampling and assaying the property. He continued sampling operations and his attempts to find a market for the ore until this suit was brought. He did the assessment work on the claims, or had the same done, and paid the $70 per month provided for in the lease each and every month up to November, 1941, although the plaintiff testified that on many occasions this was paid after notice of default was given by him. In October, 1940, after such a notice, the defendant paid the arrearages for seven months. It was conceded at the trial that "he has complied with the requirements of the contract by either offering to pay or paying the $70 a month."

On November 26, 1941, the plaintiff gave the defendant a written notice that this lease "is hereby forfeited, canceled and avoided" for the reasons that the defendant had failed to mine and produce 70 tons of ore per month, that he had failed to do the annual assessment work, that he had failed to post nonliability notices, and that he had permitted more than 180 days to elapse without work or development operations. The plaintiff admitted that about December 1, 1941, the defendant gave him a check for the November payment of $70 and that he subsequently gave him another check for the December payment. The plaintiff kept these checks, filed suit on December 31, 1941, and some time in January, 1942, returned these two checks to the defendant.

The court found for the plaintiff finding, among other.

things, that the defendant has not used said lease to mine ores or to work said properties; that he had not met his guarantee that at no time would he produce less than 70 tons of ore a month; that he had not vacated the premises when he failed to do any work or make any improvements for consecutive periods of 180 days; and that he did not surrender possession after service of the thirty days' notice. No finding was made on the issue as to whether the monthly payments of $70 had been properly made. A judgment was entered decreeing that the plaintiff is the sole and exclusive owner of these claims, that the defendant is without any right therein or to any part thereof, canceling the lease, decreeing that an abandonment had taken place and enjoining the defendant from entering the premises or asserting any rights thereto. From this judgment the defendant has appealed.

It is obvious that the judgment is erroneous in enjoining the appellant from entering the premises and asserting any rights under the lease. Aside from other considerations, the appellant paid $70 a month for nearly three years and under the plain provisions of the contract he was entitled to remove several hundred tons of ore represented by said advanced royalty payments at any time while the lease was in effect. Not only was a proper notice necessary in order to terminate that right, but there was and could be no default in having failed to mine and remove that amount of ore which he was particularly authorized to mine and remove at a much later date.

More important, however, an apparent misinterpretation of the terms of the lease has led to findings which are not supported by the evidence. The court found that the appellant was in default because he had failed to actually work the mines and produce not less than 70 tons of ore per month. The lease provided that the claims were leased to the appellant not only for the purpose of exploring, developing and removing ores, but also for the purpose of selling the products and paying the respondent the royalties which were particularly set forth. While the lease provided that the appellant was to work the properties in such manner as to produce a yield of at least 70 tons of ore per month it was then provided that the appellant should guarantee the result of such a production by paying $70 per month during

the term of the lease as advanced royalties in case that amount of ore was not actually mined. All parts of an instrument must be considered together and the only reasonable interpretation of these provisions is that the lessee, in the event he failed to produce that amount of ore each month, should have the right to pay the amount agreed upon as a substitute for the other requirement, with the right at a later time to remove an amount of ore corresponding with the advanced royalties paid. There is no question that the appellant made all of these payments, two of which were paid and accepted even after the final purported notice of default was served. Not only is this the only reasonable construction of the contract but it was interpreted by the parties in precisely that manner for nearly three years. ▆ The advanced royalties thus provided for were accepted by the respondent with no claim that the contract provided that ore should actually be mined and without making the objection that actual mining operations were required, and many notices of default were served and complied with on the theory that the monthly payments of $70 were a sufficient compliance with these provisions of the lease. It should also be observed that by accepting these monthly payments throughout the entire period the respondent waived any default covered by this finding and that he is estopped from now claiming any such default. (*Kern Sunset Oil Co.* v. *Good Roads Oil Co.*, 214 Cal. 435 [6 P.2d 71, 80 A.L.R. 453]; *McPherson* v. *Empire etc. Co.*, 122 Cal.App. 466 [10 P.2d 146].) When changed conditions indicated that the claims might be operated at a profit this action was filed, but there is an entire absence of evidence to sustain a finding of default in this respect.

There is no evidence in the record to sustain the court's finding of default on the part of the appellant with respect to the doing of the annual assessment work, or with respect to the failure of the appellant to carry a policy of Workmen's Compensation Insurance. There is also no evidence to sustain the court's finding that the appellant had abandoned the lease by failing to do any work thereon for a period of 180 consecutive days. The evidence discloses, without conflict, that up to November, 1941, about a month before this action was filed, the appellant was continuing his work of sampling and ascertaining what ore was there and his attempts to find a market for the ore which was there and which might be

produced, and that he was still making his payments of $70 per month and in all respects complying with the contract in the manner which had theretofore been entirely satisfactory to the respondent.

Finally, the purported notice of forfeiture given in November, 1941, did not comply with the requirements of the lease and was insufficient to support an action brought for the purpose of abruptly terminating the lease and the lessee's rights thereunder. In that notice, for the first time, the respondent disclosed that he claimed an interpretation of the lease differing from that previously accepted and acted upon by the parties. If, as then claimed for the first time, it had been respondent's duty to actually work the claims and produce at least 70 tons of ore per month he would still have been entitled to thirty days in which to comply with that requirement after service of the notice. This opportunity was not given him and two further monthly payments were accepted by the respondent, followed immediately by the bringing of this action. On the record before us, the evidence fails to support the essential findings.

The judgment is reversed.

Marks, J., and Griffin, J., concurred.