[Civ. No. 7856.   Third Dist.   Apr. 9, 1951.]

EDWARD H. JULIEN, Appellant, v. PHIL GOSSNER, Respondent.

Floyd Merrill and Erskine, Pillsbury & Tulley for Appellant.

Tebbe & Correia for Respondent.

VAN DYKE, J.—This action arose out of a lease of agricultural lands in Siskiyou County. Plaintiff and appellant Julien owned the land. Defendant and respondent Gossner occupied the land for three years, that is, from January 1, 1946, to December 31, 1948. The terms and conditions of his tenancy were agreed upon orally during November of 1945, and he went into possession on January 1st. During the month of February following the parties exchanged letters concerning some of the leasing terms with respect to rental. The court made findings, in substance, as follows: For the first year, ending on December 31, 1946 (not August 31st as contended by appellant), respondent was to pay as rental, one-fourth of all crops and one-fourth of all receipts from pasturage, with this qualification, that respondent, for pasturage consumed by his own hogs would pay to appellant the whole value of such pasturage. Upon that basis and for the first year the court found that respondent became indebted for rent in the total sum of $1,161.80, of which he paid $207.22, leaving a balance owing of $954.58. This total rental included a charge for pasturing his own hogs made up of $233 for stubble pasturage and $100 for grass pasturage on about 10 acres of creek bottom land. Neither party challenges the findings as to the amount of these rentals for the first year and judgment in favor of appellant was given therefor, subject, however, to certain offsets hereafter mentioned. Respondent continued to occupy the property and during the remaining two years of his occupancy paid various sums for rent.

With respect to the rent to be paid by respondent for the last two years of his occupancy the court found that the rent was agreed to be the same as for the first year, excepting that respondent "would not be obligated to pay or account to plaintiff for all the proceeds from the hog pasturage but only for one-fourth thereof" and that respondent remained in

possession of the premises until December 31, 1948 "pursuant to said [oral] understanding that should he remain in possession after the first year all the terms and conditions of the original lease would be the same, except that instead of all the rents for hog pasturage going to plaintiff [appellant here], only one-fourth ($\frac{1}{4}$) thereof would go" to him. Further, on this same item of pasturage for respondent's hogs, the court found that the parties had agreed that after the first year respondent did account to plaintiff for "one-fourth ($\frac{1}{4}$) of all pasturage used by him or sold to others, hog pasturage excepted."

Appellant claiming that the right of respondent to occupy the property terminated by agreement on August 31, 1948, served upon respondent a 30-day notice that his tenancy would expire on that day. ■ As noted, the court found against this contention as to the date of expiration and since the finding was based upon conflicting evidence it must be upheld. It follows that appellant's notice of termination was ineffective for any purpose. But appellant, further claiming that respondent had been guilty of breaching various conditions of his tenancy, served upon respondent two further notices, both on August 24, 1948. One of these notices was captioned "Three-Day Notice to Perform Covenants or Surrender Possession" and specified 10 breaches of which it charged respondent to be guilty: 1. That respondent had failed to maintain in good repair a pressure pump system which was on the property; 2. That respondent had not built a dam on a creek bottom; 3. That respondent had permitted his hogs to damage the premises and run at large through forbidden areas on the property; 4. That he had pastured sheep on the property; 5. That he had failed to keep an employee on the premises at all times; 6. That he had not supplied board and food to defendant's aunt, Miss Gladys C. Julien; 7. That he had failed to give a proper or any accounting of the crops produced on the premises during the years 1947 and 1948; 8. That his employees had negligently caused a fire to destroy a building; 9. That he had failed to keep fences and buildings in proper repair; and, 10. That he had so farmed parts of the property as to exhaust the soil and that he had failed to properly summer fallow parts of the property. The court found that none of these charges of breach were true and these findings are supported by substantial evidence. The third notice served was a three-day notice demanding possession. After the service of these notices respondent remained

in possession up to December 31st, the date which the court had found to mark the expiration of his right of tenancy. The effect of holding, as we do, that respondent had not breached his lease in any of the particulars charged and that under its terms he had a right to possession to the end of 1948, at which time he left the property, is that the remaining issues have to do with the amount of money respondent owed appellant as his landlord. In this respect the court found that, with the exception of money accruing as rental during the first year of respondent's occupancy, all rentals had been properly accounted for and paid over. The record shows that appellant visited the property three or four times each year during respondent's occupancy and that from time to time he had received accountings and the money shown to be due thereby, with the exception of the last year. During that year respondent had grown rather extensive crops and had paid fairly large sums of money to appellant as the land-lord's share thereof, except that he was indebted for pasturage in the sum of $168.75, which he had not paid, and for one-fourth the value of a rye crop, amounting to $339.60, which was likewise unpaid. Adding these two sums to the $954.58 found unpaid from rentals accruing in 1946 the court found a total of $1,462.96 rental unpaid.

Respondent had cross-complained and counterclaimed for various sums of money he alleged to be due him from appellant. Although the appellant's action purported to be brought pursuant to his notice of breach and demand for possession, and although he demurred to the counterclaim and cross-complaint as not being permissible in such an action, he neverthe-less withdrew that objection and the issues of the counterclaim and cross-complaint were tried. Responsive to those issues, the court found that appellant was indebted to respondent for wheat delivered to appellant's aunt in the sum of $358, for fencing materials furnished by respondent and for which appellant was obligated to pay in the sum of $110, for fencing wire under the same conditions $82.86, for alfalfa seed in the sum of $626, and for cartage to transport appellant's share of the 1948 crops in the sum of $168.06. The court applied these sums in reduction of the amount found due appellant and entered judgment in appellant's favor in the net sum of $118.10.

Appellant first contends that he should have been allowed the reasonable value of pasturage consumed by respondent's hogs during the years 1947 and 1948. We think this con-

tention must be sustained. While the findings are somewhat confusing upon the matter, it is apparent that the court made no allowance for pasturage admittedly consumed during those years, and respondent by his answer and in response to appellant's allegations that he was to be paid for all pasturage consumed by respondent's hogs admitted that he was to pay "one-fourth (¼) of all pasturage used by him or sold to others." ▮ Thus with respect to pasturage used by respondent, the only issue made by the pleadings was whether all such pasturage or only one-fourth thereof was to be paid as rental. Responsive to that issue, the court found, as we have noted, that for the first year such pasturage should be wholly paid, but when the court found that nothing was to be paid for the remaining two years it went beyond the issues made by the pleadings.

" '. . . The finding should be confined to the facts in issue. The province of the court in respect to facts is to determine but not to raise the issue.' . . . 'Where a complaint in an action contains an allegation of fact which is distinctly and unqualifiedly admitted by the answer, there is no issue as to the fact. The allegation of fact being admitted it is conclusive. A finding against the admission is therefore outside the issues.' . . . 'When a trial is had by the Court without a jury, a fact admitted by the pleadings should be treated as "found." ' . . . If the court does find adversely to the admission, such finding should be disregarded in determining the question whether the proper conclusion of law was drawn from the facts found and admitted by the pleadings. . . . In such case the facts alleged must be assumed to exist. Any finding adverse to the admitted facts drops from the record, and any legal conclusion which is not upheld by the admitted facts is erroneous.' " (*Welch* v. *Alcott,* 185 Cal. 731, 754 [198 P. 626].)

Here respondent admitted he was to pay one-fourth of the value of pasturage consumed by his animals. He denied he was to pay more. In part, the court upheld this denial, but under the issues so made up it could not find that for any of the period of respondent's occupancy he was not required to pay anything.

▮ The fact, however, that pasturage for this item in some amount may have been payable as rental during 1947 and 1948, before the notice of breach was served upon respondent, does not result in a right in appellant to the forefeiture of the lease. The notice of breach so served did not specify this

default. The breach amounted to a default in rent and by the plain provisions of section 1161, subdivision 2, of the Code of Civil Procedure, under which this notice was given, it was necessary that the default be specifically pointed out if a forfeiture on account thereof was to be claimed. ▪ The evident purpose of that section is to specifically point out breaches complained of in order that they may be remedied within the time allowed by the statute. ▪ Clearly the claim of forfeiture is limited to the breaches thus specifically pointed out and cannot find support in any breach not so designated. (*Johnson* v. *Sanches,* 56 Cal.App.2d 115 [132 P.2d 853], and cases cited.)

▪ Again, notwithstanding his claim that respondent had not paid this part of the rental, appellant nevertheless continued right along to accept rental payments that were made both before and after he gave his notices. In this respect, we will refer to only one portion of the evidence. On July 12, 1948, respondent wrote to appellant, saying that he was beginning to harvest a crop of grain and was delivering the same to a milling company at Montague for a named price and that the landlord's share of one-fourth would go through at that rate if it was satisfactory. While appellant did not respond to this letter, nevertheless on about July 16th he received $1,000 partial payment of his share on this grain and on September 21st, after the notice had been given, he received $3,722.58 as being the balance of his share. Appellant here claims that the trial court should have declared the lease to have been forfeited as of August 31, 1948, and should have treated appellant as a trespasser from that time forth and accountable for the full returns from the property, plus damages, and that he should have trebled these amounts. But appellant was in no position to make such demands.

"The acceptance of rent by the landlord from the tenant, after the breach of a condition of the lease, with full knowledge of all the facts, is a waiver of the breach and precludes the landlord from declaring a forfeiture of the lease by reason of said breach. This is the general rule and is supported by ample authority." (*Kern Sunset Oil Co.* v. *Good Roads Oil Co.,* 214 Cal. 435, 440 [6 P.2d 71, 80 A.L.R. 453].)

". . . The enforcement of covenants for forfeiture are avoided whenever possible. The right of the lessor to declare a forfeiture of a lease by reason of the making of a sublease without the lessor's consent in violation of the lease is waived when the lessor, after knowledge of the sublease, accepts the

rents specified in the lease.'' (*Bedford Investment Co.* v. *Folb,* 79 Cal.App.2d 363, 366 [180 P.2d 361].) See, also, *Van Doren* v. *Thurber,* 57 Cal.App.2d 506, 510 [134 P.2d 829].

█ The notice served by appellant did state that the lease had been breached for failure to summer fallow or subsoil any of the land in 1948. The court found this not to be true and we think from the situation that the court was warranted in so finding. From the testimony the court could have concluded that rental was accepted after the proper time for summer fallowing and subsoiling, if there was such obligation. Also the appellant had informed respondent he had leased the land to another who should be put in possession that he might proceed with farming for the following year. Responsive to this, respondent informed that other that while he was holding the property for pasturage purposes he would so conduct his operations as not to interfere with any farming that the succeeding tenant desired to do. The succeeding tenant testified in this respect that he was not interfered with by any acts of respondent and that respondent in that respect had been most cooperative, but that he did not go upon the land to do any farming because he knew of the dispute between appellant and respondent and, as he put it, he ''was going to stay outside the line of fire.'' He also said that because of the dry year in 1948 it would have been impossible to plow any land before October 10th to 15th. The evidence applicable to the period prior to the giving of the notice of breach showed that this particular covenant had been performed up to that time and supported the court's findings that the respondent had not been guilty of failure in this respect.

█ By the terms of the agreement between the parties and as a part of the rental, respondent was obligated to furnish board to appellant's aunt, who lived on a reserved portion of the ranch. The testimony was to the effect that he had performed this obligation even up to the end of the year, although he admitted that after July of 1948 his employee who was on the property made a charge against Miss Julien of $30 per month for board. There was no evidence that this was paid and it was shown that she received board up to the end of the year. There was no evidence as to the value in money of board for the aunt. The court was justified in finding no breach of that particular obligation.

Appellant next contends that the court erred in awarding respondent judgment for the sums claimed in his counterclaim and cross-complaint. Extended discussion is not necessary.

The evidence supports the court's findings in this regard. ■ It may be said, however, that upon this point the appellant in part takes the position that by the correspondence exchanged in February, 1946, the terms of the tenancy were reduced to writing and that respondent was bound thereby. As we have noted, the court found against this; and we think the finding was correct. The opening letter written by respondent stated, not that he wanted the lease reduced to writing, but that he wanted to write to appellant about ''some of our agreement'' concerning the lease. The court found, as heretofore stated, that the correspondence only affected the relations between the parties for the first year of respondent's occupancy and that, except for that, both parties had gone along on the basis of the original oral agreement.

As to the other items, to wit, the alfalfa seed, the cartage, wheat furnished the aunt, and fencing materials furnished by respondent, there was evidence that these matters had been agreed to in the beginning.

■ One other finding is not supported by the evidence. The court allowed against appellant a charge for cartage for transporting his share of the 1948 grain crop from the ranch to the mill. This charge was allowed at $2.00 per ton, but respondent paid only $1.50 per ton, and he should have been allowed no more. The difference is $50.51.

The cause is remanded to the trial court with directions to amend the findings of fact and conclusions of law so as to find that during the year 1948 respondent, pursuant to the agreement between the parties, transported the landlord's share of the grain grown during that year at a reasonable cost of $117.55; that upon the evidence now in the record or to be taken, if necessary, the trial court find the reasonable value of the pasturage used for respondent's hogs for the years 1947 and 1948 and award appellant one-fourth thereof. These things having been done, the trial court is directed to enter an amended judgment accordingly. In all other respects the judgment is affirmed. (*Edwards* v. *Edwards,* 90 Cal.App.2d 33, 43 [202 P.2d 589]; *Lind* v. *Baker,* 31 Cal.App.2d 631, 641 [88 P.2d 777]; *Cappelmann* v. *Young,* 73 Cal.App.2d 49, 57 [165 P.2d 950].)

Adams, P. J., and Peek, J., concurred.

A petition for a rehearing was denied April 30, 1951.