[Civ. No. 4509. Fourth Dist. Oct. 6, 1952.]

GROUP PROPERTY INCORPORATED, Respondent, v. DR. LYMAN W. BRUCE, Appellant.

550

McInnis & Hamilton for Appellant.

Edgar B. Hervey, Thomas P. Golden and Henry F. Walker for Respondent.

GRIFFIN, J.—Plaintiff corporation brought this action against defendant for declaratory relief and asked that defendant be ordered to execute and deliver a conveyance of certain real property and that it be required specifically to perform an option agreement to purchase (included in the provisions of the term of a lease of the property) whereby defendant agreed to sell the property to plaintiff under certain specified conditions.

The material portions of the lease may be thus summarized. Defendant leased to plaintiff, from May 1, 1949, to May 1, 1952, at $500 per month net, several lots on which a substantial building had been previously erected. Defendant acknowledged rent of the first and the last two months of

the lease. In paragraph 6 lessee agreed to "spend on the buildings at least $3,333.00 during each year of the term of this lease, and lessee agrees to submit to lessor factual proof of such expenditures for improvements at the end of each calendar year. Any amount expended above said sum in any year shall be credited on the obligation for the succeeding year or years." It was agreed that plaintiff was not delinquent in any rent payment. Paragraph 13 provides that should lessee fail "to pay the rent herein reserved . . . or fail to faithfully perform or observe any other covenant or condition of this lease on its part within ten (10) days after written notice of the breach thereof, then the lessor may, at its option, and at any time during such default or defaults enter upon and repossess the whole of the demised premises . . . and at its option either (1) terminate this lease . . . or (2) . . . re-rent the demised premises . . ." Paragraph 14 provides: "An option is hereby given to lessee to purchase the demised premises at any time during the term of this lease for the sum of Eighty-five Thousand Dollars ($85,000.00), payable Thirty Thousand Dollars ($30,000.00) down and the balance of Fifty-five Thousand Dollars ($55,000.00) to be paid at the rate of Five Hundred Fifty Dollars ($550.00) or more a month, which amount shall include interest at the rate of five per cent (5%) per annum on unpaid balance . . . and any rentals paid to that time in excess of such interest shall be applied as a part of the down payment of the purchase price. . . . In the event it is not the intent of the lessee to exercise his option to purchase, he will notify the Lessor at least ninety (90) days prior to the expiration of this three year lease."

The evidence shows that a few days prior to May 7, 1951, Mr. Parmer, president of plaintiff corporation, and a majority stockholder therein, brought a copy of the lease to Mr. Hervey, plaintiff's attorney, who was employed and authorized by plaintiff, through Mr. Parmer, to exercise the option and open an escrow for the purchase by plaintiff of the property. Sometime prior to April 5, Parmer had talked to defendant and told him it looked as though plaintiff might have someone who would buy the property from plaintiff; that a verbal 60 days' option had been given to the Elks Lodge and that plaintiff would have to wait until the 60 days had expired before working out any different plans. On May 7, Mr. Hervey phoned defendant and, according to his testimony, told defendant that he was calling as plaintiff's attor-

ney; that "we wanted to exercise our option to purchase" or "we wished to exercise their option"; and asked when defendant would meet with him and open an escrow and deposit the funds called for by the contract; that defendant replied he was busy at the moment; that he would think it over and call him later. (It should be here noted that the lease makes no provision for a written notice to exercise the option.)

Instead of calling back, defendant apparently went to his attorney about giving plaintiff notice of default and declaration of forfeiture. Such a notice was prepared on May 9. This notice reads in part: "You are hereby required, within ten days after service of this notice on you, to comply with paragraph 6 of the lease herein referred to by expending the sum of $6,666 on the buildings at the demised premises and improve the same, which expenditure of said sum is the amount called for in paragraph 6 of said lease, to wit: $3,333 for the calendar year May 1, 1949 to April 30, 1950, and $3,333 for the calendar year May 1, 1950, to April 30, 1951. You are further notified that the undersigned does hereby elect to declare a forfeiture of the lease under which you hold possession of the above described premises." The original and some duplicate copies of the notice were signed by both defendant and his counsel and were served on May 9, 1951, on Mr. Byrnes, a director of plaintiff corporation, who on the same day delivered it to the secretary of the corporation and the latter delivered it to Mr. Hervey within 48 hours. A similar notice was served on the secretary of the corporation on May 15, 1951. On May 14, Mr. Hervey, as claimed agent for plaintiff and the Elks Lodge, opened an escrow with the title company, deposited $34,000 therein with instructions to pay defendant the amount necessary to exercise the option upon receipt of a deed from defendant. On May 14, plaintiff, through its attorney, Mr. Hervey, served on defendant and his counsel a written notice that plaintiff lessee "does hereby exercise the option." Therein he computed the down payment as $25,000, and added $6,666 as the claimed amount not expended by plaintiff lessee under the provisions of paragraph 6 in relation to improvements. On July 10, an additional sum of $47,000, plus $550 was deposited in the escrow and defendant was notified of the fact. This notice was accompanied by a copy of the escrow instructions. Demand was made for a deed from defendant to plaintiff. This sum of money was obtained, by personal notes of Mr. Hervey and others, from a bank, and was accompanied by an offer

of full compliance with all provisions of the lease and option. Defendant refused to comply. He relies first upon his notice of forfeiture, and argues that it shows, as a matter of law, that it, *ipso facto,* terminated all of plaintiff's rights and operated as a forfeiture of the option to purchase the property upon plaintiff's failure to make improvements to the extent of $6,666, as provided in paragraph 6 of the lease.

Plaintiff seeks to avoid this claimed forfeiture by reason of the fact that defendant never claimed a forfeiture at the end of the respective years when the improvements were to have been made, and the further claim is made by plaintiff that defendant especially agreed and acquiesced in the non-expenditure during these two years, accepted rent for the periods involved, and expressly waived any right to a forfeiture by reason thereof.

The trial court, in effect, held in accordance with the facts related and particularly found that on May 7, 1951, plaintiff, through its attorney, orally notified defendant "that plaintiff elected to purchase the real property," and on May 14 served defendant with a written demand for performance; that the consideration named in the option was fair and reasonable; that plaintiff was able and willing to pay the purchase price; that plaintiff performed all of the provisions of the lease except it did not pay for improvements in the sum of $3,333 during the first or second years, as provided in the lease; that on May 14, 1951, plaintiff offered to pay $6,666 in excess of the purchase price provided in the lease; that defendant never gave any written notice of breach of the lease prior to May 9, 1951; that the option given to plaintiff to purchase was duly accepted and exercised by plaintiff on May 14, 1951, at a time when plaintiff's rights under said option had not been terminated; that plaintiff paid into escrow $79,665.32, after deducting the difference between the total interest due from the total rent paid, and is entitled to conveyance of the property in fee from defendant, and it ordered a decree of specific performance.

An interlocutory judgment was accordingly entered on December 20, 1951, ordering defendant to comply therewith within 10 days. Defendant refused and on January 14, 1952, a final decree was entered declaring that plaintiff was the owner of the property and quieting plaintiff's title thereto upon the payment of the amount stated.

The main question involved is whether under the claimed waiver, plaintiff was, in fact, in default, under paragraph 6

of the lease and, if so, whether defendant gave timely notice of such default and notice to quit before plaintiff elected to exercise the option. In reference to the improvements, plaintiff conceded they were not all made during the years involved. Defendant stated he never gave any oral or written notice of such claimed breach prior to the written notice herein mentioned. However, he did state that he discussed the fact that the improvements had not been made with Mr. Parmer; that he never made demand that he comply but that Mr. Parmer invited defendant to lunch and told him he realized plaintiff was partially in default in this respect and that defendant need not worry because plaintiff intended to live up to its agreement; that defendant told Parmer that plaintiff's integrity was "all right, you go ahead. It is all right"; that in one of these discussions defendant said it was his understanding that plaintiff "would either do the work or pay the cash"; that one of these conversations was at the end of the first year and the other just when it was whispered around that the Elks intended buying the building, i. e., about 30 days prior to May 1, 1951; that the reason for not allowing plaintiff to exercise its option was because the price of the property had gone up and he thought plaintiff was an opportunist in not making the improvements as time went along; that if plaintiff had offered defendant $6,600 at the time, he would have taken it rather than require him to do the work.

Mr. Parmer testified he told defendant, in one of these conversations, that he had given the real estate agent for the Elks an oral 60-day option to purchase the property; that if the Elks cared to buy it, plaintiff company "will exercise its option, will purchase the property from Dr. Bruce, and sell the property to the Elks Club"; that if the Elks did not take it, he would be glad to work out some plan to operate the property with defendant; that Parmer informed defendant that he originally intended leasing the property to a labor union which was to conduct a hospital for its members and make about $10,000 in improvements on the property; that this proposition fell through and plaintiff was left with the lease and that he rented out quarters at a loss of about $200 a month; that no added improvements to the building were therefore necessary and that he then told defendant that if plaintiff turned back the lease to defendant at the end of its term he would pay to defendant in cash the remaining amount due, as provided in paragraph 6, and if plaintiff purchased the property under the option during that time, it would not be

necessary for plaintiff to make those payments; and that defendant at least acquiesced in this suggestion. ▮ Apparently, no demand was made upon plaintiff to perform with the intention of declaring a breach, until the written notice in dispute was sent. Defendant continued to accept rent during all of this period. It therefore sufficiently appears that there was a waiver of such breach during the period in question. There is sufficient evidence to support the finding that plaintiff indicated his desire to exercise the option before being served with notice of forfeiture. Under paragraph 13 the notice of forfeiture was not self-operating as of the date of service. It gave notice that plaintiff was "required, within ten days after service of this notice . . . to comply with paragraph 6 . . . by expending the sum of $6,666 on the buildings." In the meantime, the written notice of the option was given, the escrow opened, and a deposit was made while the lease was in effect. Had plaintiff failed to exercise its option or to comply within the 10-day period, another question might be here presented.

Defendant cites considerable authority, such as *Zucco* v. *Farullo,* 37 Cal.App. 562 [174 P. 929], to the effect that if the lessee has violated the conditions of the lease which could not afterward be performed, it was not necessary to include in the notice a demand for performance before forfeiture could be effected. It is apparent here that defendant had waived the breach and had tacitly, at least, consented to the proposition that if the option was to be exercised, payment for improvements was to be waived or paid in cash. Payments for rent were received after full knowledge of the claimed breach. Payment in cash for the purchase of the property was tendered before the 10-day period expired. Surely, some timely notice to place plaintiff in default, after the long and continuous waiver existed, was required, or was necessary by the terms of paragraph 13.

In *Kern Sunset Oil Co.* v. *Good Roads Oil Co.,* 214 Cal. 435 [6 P.2d 71, 80 A.L.R. 453], the lease provided that lessees should drill two wells each year until 16 wells had been drilled. Up to that time it had drilled only 13 wells. For nearly five years lessor, with full knowledge of the facts, accepted the regular monthly royalty payments without complaint. Later, a notice of breach of the terms of the lease was served and royalties were thereafter accepted. The court held that under these facts the lessor waived the breach of the lessees and said (quoting from the syllabus) :

"The theory upon which the courts hold that acceptance of rent after the breach of the covenants of a lease, with knowledge of all the facts surrounding such breach, constitutes a waiver of such breach, is that by acceptance of the rent under these circumstances the lessor recognizes the existence of the lease and that it is inconsistent and not permissible for a party to recognize the existence of a lease and accept benefits under it and at the same time claim that it is forfeited and seek to recover the fruits of the forfeiture."

See, also, *McGlynn* v. *Moore*, 25 Cal. 384, where it is said (quoting from syllabus):

"If the lessee covenants in the lease to build within a given time on the demised premises, the covenant is not a continuing covenant; and if the lessee fails to build, the receipt of rent by the lessor, accruing after the end of the time given, is a waiver of the forfeiture."

(See, also, *Bedford Investment Co.* v. *Folb*, 79 Cal.App.2d 363 [180 P.2d 361]; *Miller* v. *Reidy*, 85 Cal.App. 757 [260 P. 358]; *Julien* v. *Gossner*, 103 Cal.App.2d 338 [229 P.2d 786].)

Defendant knew that plaintiff had breached the lease in reference to the first and second years' improvement money for many months and continued to accept rents under the lease thereafter. Under ordinary conditions, it would therefore appear that there was sufficient evidence of waiver, were it not for the portion of the lease (paragraph 13) which provides that "the Lessor may, at its option, *and at any time during such default or defaults* enter upon and repossess the whole of the demised premises by summary proceedings or otherwise, and at its option either (1) terminate the lease and all rights of the Lessee therein and in and to the demised premises. . . ." By the terms of paragraph 13 plaintiff had 10 days in which to correct the default before the lease was terminated, during which period plaintiff gave written notice of its election to exercise the option. The lease was still in effect during that period unless, as contended by defendant, the service of the notice to perform automatically terminated the lease as of that time under section 1161 of the Code of Civil Procedure under the theory that demand would be impossible, useless, and is accordingly excused. (See *Schnittger* v. *Rose*, 139 Cal. 656 [73 P. 449]; *Prichard* v. *Kimball* 190 Cal. 757 [214 P. 863].)

■ ■ It is the general rule that forfeitures are not favored, and any inconsistent act, dealing, or expression of intention, by speech or conduct, not to require the doing of a

thing, suffices to prevent predication of any forfeiture claim for lack of the doing of such thing. Here plaintiff proceeded and acted upon defendant's statement that it was all right to go ahead without making the yearly expenditure and plaintiff could take care of this in some other manner, such as by expending the whole sum in the third year or by payment in cash. Clearly, defendant was in no position to declare a forfeiture based on that to which he had consented and agreed, and particularly so where the provisions of the agreement required that the lessor give the lessee 10 days' written notice of its breach. We do not deem the service of the notice in the instant case to have terminated the lease *ipso facto* as of that date, and conclude that the lease was still effective during the 10-day period which permitted the plaintiff to exercise its option to purchase.

In support of the judgment it should also be noted that the court specifically found that plaintiff "elected to purchase the real property" under the option, on May 7, when defendant was orally notified by Mr. Hervey of this fact. This was before any written notice of forfeiture had been served by defendant. Considering the evidence pertaining to the entire transaction leading up to the declaration of the forfeiture, there is sufficient evidence to support this finding, even though the written notice of election to exercise the option was not given until May 14, 1951.

The next argument is that plaintiff corporation, as such, did not in fact or in law exercise its option to purchase and that it paid no money of its own toward the purchase price; that it made no demand for title in the escrow instructions and that strangers to the lease attempted to exercise the option without right. Defendant contends that neither Mr. Parmer nor Mr. Hervey were authorized by the plaintiff corporation to exercise the option and accept title or dispose of the property to the Elks Lodge since the corporation record showed no authority to do so. Mr. Parmer definitely testified that he authorized Mr. Hervey to act for the plaintiff corporation in all the dealings indicated. The treasurer of the corporation verified the complaint in which this authorization was alleged. Under the articles of incorporation Mr. Parmer was the authorized manager "to supervise and direct the business of the corporation." The business of the corporation was the leasing, purchasing and selling of property. The lease and option agreement was apparently duly executed

and authorized by the corporation. The authority of Mr. Parmer to act for the corporation in the exercise of the option cannot now be questioned by the defendant under the holding in *Jeppi* v. *Brockman Holding Co.*, 34 Cal.2d 11, 16 [206 P.2d 847]. It can fairly be said that it was plaintiff corporation, through its authorized agent, who was acting in reference to the exercise of the option and the demand for a deed; that the money placed in escrow was subject to its instructions; and that there was a mutuality of obligation between the plaintiff and defendant upon which the court had the authority to compel specific performance by the defendant.

■ The last argument is that the plaintiff abandoned its option to purchase by reason of the purported payment of rental to the landlord after plaintiff exercised its option to purchase the property and that there was no timely tender of the purchase price, citing such cases as *Mariposa Commercial & Mining Co.* v. *Peters*, 215 Cal. 134, 142 [8 P.2d 849]; *Knowles* v. *Murphy*, 107 Cal. 107 [40 P. 111]; *Downer* v. *Buehrle*, 90 Cal.App.2d 719 [203 P.2d 795]; and 15 Cal. Jur. p. 639, § 46.

The record shows that plaintiff paid defendant $500 on May 1, 1951, for rental for the month of May. This was before the option had been exercised and before any notice of forfeiture was served. No abandonment of right could be claimed in this respect. However, it does appear that about June first, after the tender of the purchase price, plaintiff sent a $500 check and a check for $140 to defendant but defendant refused to cash them. The testimony on this subject is the statement of Dr. Bruce:

"Q. (By Mr. Hervey) In addition to the rentals that had been paid and which you said you have received to and including the month of May, 1951, you also received another check for $500 from the plaintiffs which you have not yet cashed, that is true, isn't it? A. Well, I have two checks that I haven't cashed. . . .

"Q. In the amount of $500 each? A. No, one is 500 and the other is 140.

"Mr. McInnis: 140?

"By Mr. Hervey: Q. So you have received in addition to the rentals you have spoken about $640 additional, is that correct?

"Mr. McInnis: That is objected to as not proper examination. He says he has checks, he hasn't received the rentals.

"MR. HERVEY: He testified he received the rentals up to and including the month of May, 1951. I understand that to be correct.

"BY MR. HERVEY: Q. That is true, isn't it? A. I think so.

"Q. In addition to that you have received two checks, one for $140 and one for $500? A. That is right.

"Q. Those last two checks you have not cashed? A. That is right."

From this evidence defendant argues that plaintiff paid or offered to pay rental, after the time plaintiff claimed it exercised its option to purchase. It is not clear as to the nature of these proffered payments. The option provides that in case the option is exercised, interest at 5 per cent shall be paid by plaintiff on the purchase price from the date of the inception of the lease, and any rentals paid to that time, in excess of such interest, shall be applied as a part of the down payment. Plaintiff argues that the evidence does not show that they were payments on subsequent *rental*. This point was raised for the first time on appeal and there is no finding on the subject. However, the checks were not accepted by the defendant and there could be no abandonment, as a matter of law, predicated upon this testimony. ■ Abandonment is never presumed, but must be made to appear affirmatively by the party relying thereon. See *Moon* v. *Rollins*, 36 Cal. 333, 340 [95 Am.Dec. 181]; *Pidgeon* v. *Lamb*, 133 Cal.App. 342, 348 [24 P.2d 206]; *Weideman* v. *Staheli*, 88 Cal.App.2d 613, 616 [199 P.2d 351]; and *Turner* v. *Markham*, 155 Cal. 562, at pages 572-573 [102 P. 272], where it is said:

"Abandonment is government by intent, and the intention to abandon must be established by declaration or by conduct. . . . Here, clearly, there was no abandonment, but rather positive evidence of a prosecution to completion of the oral agreement."

■ So it is in the instant case. Plaintiff informed defendant on May 7, that it was exercising its option and wanted the defendant to appear at the title company so that an escrow could be opened by them for that purpose. Defendant, stating that he would think it over and call back, immediately went to his attorney and caused the latter to prepare and serve the May 9th notice. Plaintiff then gave the May 14th notice after the opening of the escrow and the deposit of an amount in excess of that required for any down payment under the option provisions. The complaint

in this action was filed and the defendant verified the answer to the original complaint on May 25, 1951, six days *before* the two checks were sent to defendant. It does not therefore appear that plaintiff had abandoned its claimed right to exercise its option. The action was diligently begun and prosecuted. Considering plaintiff's activities, the notices given, the principal proceedings had, and the entire evidence in the cause, they fully support the conclusion that there never was and never had been any intention on the part of plaintiff to abandon the exercise of its option to purchase. The burden was on defendant to prove the elements of this assertion which he makes on this appeal. In this, defendant has failed. (*Swigert* v. *Stafford,* 85 Cal.App.2d 469, 472 [193 P.2d 106].)

As to the second contention that plaintiff failed to make timely tender of the purchase price, this fact is not borne out by the evidence. Defendant was notified orally that plaintiff was exercising its option and defendant was asked that he meet plaintiff's agent at the title company to open the escrow and arrange for the necessary deposit of funds and the deed. Apparently defendant did not act on the suggestion, and within a reasonable time a sufficient offer and tender was made, and under the interlocutory judgment defendant was again given the opportunity to accept the offer and tender as made, but again refused to do so. It is apparent from the facts related that a tender would have been refused under any conditions. No advantage can now be claimed by defendant on the ground that a tender was not properly and timely made immediately following the exercise of the right to purchase. (*Dowd* v. *Clarke,* 54 Cal. 48; *Penilla* v. *Gerstenkorn,* 86 Cal.App. 668, 670 [261 P. 488].)

The attempted appeal from the interlocutory judgment is dismissed. (*Krotzer* v. *Clark,* 178 Cal. 736 [174 P. 657].) Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.